MILAGROS LÓPEZ CAMPOS y JORGE R. PASTOR CORTÉS en su carácter individual y como miembro de la SOCIEDAD LEGAL DE GANANCIALES que ambos tienen constituida, demandantes y recurridos, *v.* GARAGE ISLA VERDE, INC., CARLOS M. QUIÑONES, CARMEN DELIA QUIÑONES y la SOCIEDAD LEGAL DE GANANCIALES que ambos tienen constituida, demandados y peticionarios.

*Número:* CE-90-55          *Resuelto:* 24 de abril de 1990

*Francisco M. Ramírez-Rivera* y *Pedro A. Delgado Hernández,* de *O'Neill & Borges,* abogados de los peticionarios; *Iván Garau Díaz,* abogado de los recurridos.

## RESOLUCIÓN

A la solicitud de *certiorari*, no ha lugar.

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Presidente Señor Pons Núñez emitió voto particular de conformidad. Los Jueces Asociados Señores Negrón García y Rebollo López expedirían únicamente para reducir las cuantías concedidas por concepto de daños tanto a la demandante como a su esposo. El Juez Asociado Señor Ortiz expediría.

*(Fdo.)* Francisco R. Agrait Lladó
*Secretario General*

—O—

Voto particular de conformidad del Juez Presidente Señor Pons Núñez.

Por razón de las opiniones emitidas hoy en el caso *Rodríguez Meléndez, etc. v. Supermercado Amigo, Inc., etc.*, CE-87-834, he creído procedente resumir los hechos que el ilustrado tribunal de instancia estimó probados en este caso, pues es a base de ellos que he votado "no ha lugar" al recurso de revisión. Este voto tiene el efecto de confirmar la sentencia que determinó que los hechos en este caso configuraban un hostigamiento sexual que da lugar a un remedio judicial.

Para octubre de 1986, la demandante Milagros López contaba con diecinueve (19) años de edad y había, en ese mismo año, contraído matrimonio con el codemandante Jorge Pastor Cortés. Recién graduada de secretaria, solicitó los servicios de Manpower, Inc., y el 23 de octubre de 1986 esta compañía logró colocarla como recepcionista en el Garage Isla Verde, Inc. La demandante no tuvo que entrevistarse personalmente con el presidente de Garage Isla Verde, Inc., el codemandado Carlos M. Quiñones, pues éste se encontraba de viaje.

Antes de reintegrarse a sus funciones, Quiñones llamó a su oficina por teléfono. Al escuchar la voz de la recepcionista (la

demandante), el codemandado le inquirió si se trataba de la nueva empleada y le comentó, entonces, que tenía una voz muy bonita y que tenía la esperanza de que fuese tan bonita en persona como lo era su voz.

Quiñones, quien estaba casado, se reintegró a sus funciones e intentó confraternizar estrechamente con la demandante. La invitaba a cenar fuera de horas laborables y a pasear en su lancha. Cuando regresaba de almorzar, le ofrecía bombones a los empleados y, cuando se acercaba a la demandante, le preguntaba: "¿cuáles de los bombones tú quieres, los míos o éstos?" La demandante declinó las invitaciones del demandado aun cuando en ningún momento le recriminó su conducta.

El codemandado la llamaba por teléfono a menudo y la piropeaba constantemente. En una ocasión se le acercó por la espalada, rozando su cuerpo con el de ella, con el propósito de abotonarle la blusa.

Para diciembre de 1986, venció el contrato de la demandante con Manpower, Inc., pero Garage Isla Verde, Inc. le ofreció continuar en el empleo. El 1ro de enero de 1987 pasó a ocupar el puesto de secretaria recepcionista del presidente de la corporación, el señor Quiñones.

El tribunal encontró probado que la demandante *tenía necesidad de recibir ingresos*, que estaba recién casada y que los gastos de hogar así lo requerían. Además, que la compañía demandada ofrecía a sus empleados un plan médico beneficioso y que la localización de la oficina era muy conveniente para la demandante. Estos factores motivaron el que la demandante no comentara con nadie los acercamientos que le hiciera el demandado. También, la prueba indicó que la situación le causaba a la demandante tensión, ansiedad y angustia. Esta situación se reflejaba en su hogar y en la relación con su esposo.

A partir de febrero de 1987, la demandante comenzó a ausentarse frecuentemente de su empleo. Durante los primeros meses de ese año se ausentaba, pero presentaba certificados médicos por sus ausencias.

En mayo de 1987 sufrió una caída y se acogió a los beneficios del Fondo del Seguro del Estado. Se reintegró a su trabajo a partir de junio de 1987.

Al reintegrarse, el Contralor de la corporación le informó a la demandante que en el futuro no se le pagarían los días en que se ausentase de su trabajo, fundamentándose en el hecho de que las ausencias eran prolongadas y en que había agotado las licencias a que tenía derecho.

A mediados de 1987 la demandante quedó embarazada y se lo informó al codemandado Quiñones a fines del mes de julio de ese año. Ésta volvió a ausentarse de su trabajo frecuentemente. Durante su estado de gestación, en algunas ocasiones se excusaba con certificados médicos genuinos y, en otras ocasiones, con certificados alterados. La demandante nunca fue suspendida de empleo ni de sueldo por sus continuas ausencias aun cuando se le llamó la atención varias veces en relación con su ausentismo.

Cuando aún le restaba una semana de licencia por maternidad, la demandante se reintegró a su empleo con la compañía demandada.[1] De regreso al trabajo, el demandado le hizo la observación a la demandante de que había aumentado de peso. También le comentó que le agradaba el largo de su pelo porque le hacía ver más sensual. Terminó diciéndole que "él podía esperar a que ella pasara su cuarentena".

Luego de reintegrarse al trabajo, la demandante volvió a ausentarse frecuentemente. Entonces, el demandado la despidió y la compensó pagándole la mesada y los beneficios acumulados. Durante el tiempo en que la demandante laboró en Garage Isla Verde, Inc. no recibió aumento de sueldo, bonificación o ascenso alguno.

---

[1] Fue objeto de testimonios contradictorios el motivo que tuvo la demandante para reintegrarse a su empleo cuando aún no había expirado su licencia por maternidad. La demandante indicó que el demandado Carlos M. Quiñones le requirió que se reintegrara. El demandado testificó que ella pidió reintegrarse una semana antes a su empleo porque necesitaba el dinero. El tribunal concluye que la demandante se reintegró al trabajo, a requerimiento del demandado, en ocasión en que la señora López Campos visitó las oficinas de la empresa para mostrar a sus compañeros el bebé que había nacido.

Los hechos antes relatados revelan un patrón reiterado de conducta persistente que claramente creó un ambiente hostil y abusivo en el empleo que afectó claramente a la demandante Milagros López Campos en la realización de su labor. Provocó que ella se ausentara frecuentemente del mismo por la tensión, ansiedad y angustias que la reiterada conducta del codemandado Quiñones le causaba. Esas ausencias, a su vez, fueron la causa de su despido. Se explica el silencio con que la demandante sufrió el hostigamiento por la necesidad económica que tenía. El silencio en tales circunstancias no constituye aceptación de la conducta hostigante.

Es en atención a los hechos relatados que he votado en conformidad con la opinión disidente que emitiera en el caso de *Rodríguez Meléndez, etc. v. Supermercado Amigo, Inc., etc.*, ante, para confirmar el dictamen del tribunal de instancia.