AD-99-02                                                          1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: Hon. Melvin Robles Sanabria Juez Municipal | Querella 2000 TSPR 94 |
|---|---|

Número del Caso: AD-1998-02

Fecha: 22/06/2000

Oficina del Procurador General:

Lcda. Ivonne Casanova Pelosi
Procuradora General Auxiliar

Abogados de Hon. Melvin Robles Sanabria:

Lcdo. Pedro Malavet Vega
Lcdo. Federico Díaz Ortiz

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Hon. Melvin Robles Sanabria

    Juez Municipal                              AD-98-02

PER CURIAM

San Juan, Puerto Rico, a 22 de junio de 2000.

    Nos corresponde considerar los méritos de una querella instada contra el Hon. Melvin W. Robles Sanabria, Juez Municipal de Peñuelas al momento de los hechos, en la cual se alega que contravino varias disposiciones de los Cánones de Ética Judicial. 4 L.P.R.A. Ap. IV-A. La querella, en esencia, plantea que Robles Sanabria incurrió en conducta constitutiva de hostigamiento sexual en el empleo. Evaluado el informe de la "Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces" (en adelante, "Comisión de Disciplina y Separación") y la prueba documental que obra en el expediente de la querella, resolvemos que se configuró la conducta imputada, por lo que, en el ejercicio del poder de disciplinar y destituir a los jueces de los tribunales de menor jerarquía que nos confiere la Constitución del Estado Libre Asociado de Puerto Rico, Const. P.R., Art. V, Sec. 11, y a la luz de la gravedad de la conducta desplegada por Robles Sanabria que originó la querella en su contra, se ordena su destitución inmediata como Juez Municipal del Tribunal General de Justicia de Puerto Rico.

I

El 22 de julio de 1998, el Procurador General de Puerto Rico presentó una querella contra el Hon. Melvin W. Robles Sanabria, Juez Municipal de Peñuelas, en la que se le imputaron los siguientes cargos:

Primer Cargo

El Honorable Melvin Robles Sanabria incurrió en conducta impropia contrario al Canon I de Ética Judicial el cual, entre otras cosas, obliga a todo juez a velar por que sus actuaciones respondan a normas de conducta que honren la integridad e independencia de su ministerio y estimulen al respeto y confianza en la judicatura.

Segundo Cargo

El Honorable Melvin Robles Sanabria incurrió en conducta impropia contraria al Canon V de Ética Judicial el cual, entre otras cosas, obliga a todo juez a cumplir cuidadosa y diligentemente con las obligaciones administrativas que le imponen las leyes y reglamentos aplicables a la Rama Judicial y las instrucciones de la oficina de Administración de los Tribunales.

Tercer Cargo

El Honorable Melvin Robles Sanabria incurrió en conducta impropia contraria al Canon XI de Ética Judicial el cual, entre otras cosas, obliga a todo juez no sólo a ser imparcial, sino a preservar la apariencia de imparcialidad.

Cuarto Cargo

El Honorable Melvin Robles Sanabria incurrió en conducta impropia contraria al Canon XXVI de Etica Judicial el cual, entre otras cosas, obliga a todo juez a cumplir con otras normas de conducta que está establecidas por la ley o que son inherentes al honor tradicional de la judicatura, en este caso la Ley de Hostigamiento Sexual.

Quinto Cargo

El Honorable Melvin Robles Sanabria incurrió en conducta impropia contraria a la Regla 13 (B) (4) de las Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces de Primera Instancia y del Tribunal de Apelaciones de Puerto Rico la cual específicamente obliga a todo Juez a abstenerse de realizar gestiones que constituyan o puedan ser consideradas intervenciones indebidas con testigos.

Esta querella fue el resultado de un proceso investigativo que inició en la Oficina de Administración de los Tribunales (en adelante OAT), a raíz de una serie de quejas formuladas contra Robles Sanabria que esencialmente planteaban que éste había incurrido en conducta constitutiva de hostigamiento sexual en el empleo. La alegada conducta

constitutiva de hostigamiento sexual fue dirigida específicamente contra Nelly Pacheco Dominicci, quien fungió como su secretaria en la Sala Municipal de Peñuelas del Tribunal de Primera Instancia.

Además, conforme a la prueba desfilada en las etapas investigativas, hubo ciertas actuaciones de Robles Sanabria dirigidas contra las honorables Joanne Vega y Eugenia Cruz, juezas del Tribunal de Primera Instancia, salas municipales de Canóvanas y Maunabo, respectivamente, que, a juicio de las personas que realizaron las investigaciones de rigor, también pudieran ser constitutivas de hostigamiento sexual. Esas quejas dieron base a que la División Legal de la OAT realizara una investigación y posteriormente rindiera un informe en el cual se hizo acopio del testimonio jurado de las personas involucradas.

Robles Sanabria fue notificado oportunamente de la investigación que estaba en progreso, se le remitió copia de las declaraciones prestadas bajo juramento por las personas involucradas y se le concedió la oportunidad de expresarse sobre las imputaciones formuladas en su contra. A raíz de esa primera notificación, Robles Sanabria, en una escueta carta dirigida a la entonces Directora de la División Legal de la OAT, Lcda. Carmen D. Irizarry, expresó que, "fuera de las relaciones normales entre seres humanos y compañeros de trabajo, cualquier alegación que implique hostigamiento o acoso sexual se niega de forma rotunda". Informe de Investigación de la División Legal de la OAT, Anejo 9.

Luego de rendido el Informe de la División Legal de la OAT, la Lcda. Mercedes Marrero de Bauermeister, Directora Administrativa de los Tribunales, solicitó la realización de una investigación más abarcadora. El Informe rendido como resultado de esta nueva investigación, así como el anterior, fueron remitidos a la "Comisión de Disciplina y Separación", para evaluación. Esta Comisión designó a su Comisionada Asociada, Lcda. Enid Martínez Moya, para que, conforme a la Regla 18 de las "Reglas de Procedimiento para Acciones Disciplinarias y

de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal De Apelaciones de Puerto Rico", evaluara los informes y la prueba contenida en ellos, a los fines de que hiciera la correspondiente determinación de causa, si así lo estimaba conveniente.[1]

Así las cosas, la Comisionada Asociada determinó causa contra Robles Sanabria y, eventualmente, la Comisión de Disciplina y Separación instruyó al Procurador General a que presentara la querella correspondiente contra Robles Sanabria. El Procurador General presentó la querella correspondiente.

El querellado Robles Sanabria contestó la querella por conducto de su representación. Negó todos los cargos imputados y expresó que éstos adolecen de vaguedad al no precisar la conducta específica que motiva la querella. Señaló, además, que "en este caso se han sacado de proporción los hechos realmente ocurridos para causarle daño[] innecesario a [su] reputación". Contestación a la querella, en la pág. 2.

Luego de varios incidentes procesales, se realizó una vista evidenciaria a la cual el querellado compareció acompañado de sus abogados. Tras recibir la prueba correspondiente, la Comisión rindió su informe en el que formuló sus determinaciones de hechos y sus recomendaciones. Citamos "in extenso" las determinaciones de hechos según formuladas por la Comisión:

1. El Hon. Melvin Robles Sanabria tomó posesión del cargo de Juez Municipal en mayo de 1995.

2. Para finales de 1996 la Srta. Nelly Pacheco Dominicci fue nombrada Secretaria Auxiliar del Tribunal de Primera Instancia e inició labores en Peñuelas. Para entonces el honorable Juez Robles Sanabria cumplía sus funciones en dicho Tribunal.

---

[1] Las "Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal De Apelaciones de Puerto Rico" fueron adoptadas el 25 de septiembre de 1992, y entraron en vigor el 24 de noviembre del mismo año. Su finalidad fue establecer un procedimiento justo para tramitar las quejas y solicitudes de separación formuladas contra jueces.

3. La señorita Pacheco Dominicci comenzó a laborar como Secretaria del Juez Robles cuando ocurrieron los hechos. Para esa fecha estaba en período probatorio por haber comenzado a laborar como empleada de la Rama Judicial.

4. En cuanto a la querellante, Srta. Nellie Pacheco Dominicci, la prueba presentada demostró los siguientes hechos:

   a. En una ocasión el Juez Robles le dijo a la señorita Pacheco que el traje le quedaba bonito, pero que debía cuidar la dieta porque se le estaban formando unas "neguitas" (sic) en la cintura.
   b. El Juez Robles le comentó a la señorita Pacheco que tenía piernas bonitas.
   c. En una ocasión el Juez Robles le preguntó a la señorita Pacheco si utilizaba minifalda y por qué no usaba mahones para trabajar.
   d. En varias ocasiones, el Juez Robles se dirigía a la señorita Pacheco como "mi amor", "mi cielo" o "mi corazón". El hecho de que el Juez Robles se dirigió a la señorita Pacheco como "mi amor" fue confirmado por la declaración de la señora Myriam Rivera Torres.
   e. En muchas ocasiones, el Juez Robles observaba "de arriba abajo" a la señorita Pacheco en forma provocativa y le hacía comentarios sobre el color de lápiz de labio que utilizaba y si le quedaba bien.
   f. El Juez Robles invitaba frecuentemente a la señorita Pacheco a almorzar a solas, a pesar de que ésta se negaba.
   g. En una ocasión, el Juez Robles le preguntó a la señorita Pacheco qué había hecho en el fin de semana. Ella le contestó que había estado con su novio. El Juez le dijo "no me digas eso porque me pongo celoso".
   h. La señorita Pacheco Dominicci detestaba llegar a su trabajo, porque no quería enfrentarse al juez querellado.
   i. Tanto sufrió la querellante con la conducta del querellado que no le permitió otra opción sino quejarse de la situación descrita ante la Secretaria General del Tribunal Municipal de Guayanilla, Srta. Lucía Rodríguez, quien comunicó la queja al Juez Miguel Magraner Lizardi. Este a su vez se entrevistó con la Srta. Pacheco Dominicci, recibió su queja por escrito y la refirió a la Juez Administradora, Hon. Elba Rosa Rodríguez.

5. La Hon. Joanne Vega se desempeñaba como Jueza Municipal asignada a la Sala de Investigaciones del Centro Judicial de Ponce. En cuanto a dicha Jueza, de la prueba presentada, surgen los siguientes hechos:

   a. Durante un seminario celebrado en Ponce, el juez Robles le comentó a la Jueza Vega que el traje que ésta tenía puesto le resultaba atractivo. Le dijo, además, que le gustaría compartir con ella luego de horas laborables.

b. En una ocasión, el Juez Robles Sanabria llamó a la Jueza Vega por teléfono y le preguntó si podía decirle "mi amor". Ella se quedó fría y él le reiteró que le gustaría compartir con ella. Luego de esa llamada, el Juez Robles Sanabria continuó haciéndole acercamientos que a ella no le gustaban. Se sentía mal con la conducta del Juez. Siempre el Juez le hacía acercamientos y ella trató de ser cortés, no quería faltarle el respeto, pero entendía que le estaba sugiriendo al Juez que su actitud le molestaba. Ella no se sentía cómoda en la forma que él se dirigía a ella y le dio instrucciones a su secretaria para que no le pasara llamadas telefónicas del Juez querellado. El Juez Robles Sanabria, la visitaba en la sala donde ella estaba trabajando y ella abandonaba el lugar. Finalmente, cerró con seguro la puerta de su oficina para evitar que el Juez Robles entrara.

c. La invitó a almorzar a un restaurante en Guayanilla, a lo cual la Jueza le respondió que no, pero que podían hacer planes para ir a almorzar con otros compañeros jueces. El Juez Robles le respondió que quería ir solo con ella.

d. En muchas ocasiones, el Juez Robles iba a la Oficina de la Juez Vega. Allí se sentaba por un tiempo que excede el usual y la invitaba a almorzar.

6. La señora Myriam Rivera Torres se desempeñaba como Encargada de Servicios de Limpieza en el Tribunal de Peñuelas. Ella y la señorita Pacheco eran las únicas empleadas en dicho tribunal mientras el Juez Robles se desempeñaba allí como Juez. Los incidentes entre el Juez Robles y la señorita Pacheco ocurrieron mayormente mientras la señora Rivera disfrutaba de sus vacaciones. A pesar de que no hubo incidente alguno que pudiera constituir hostigamiento sexual entre el Juez Robles y la señora Rivera, es menester señalar que luego de que la señorita Pacheco se quejó de la conducta del juez Robles, éste llamó en varias ocasiones a la señora Rivera para que disuadiera a la señorita Pacheco.

La primera llamada ocurrió el 28 de agosto de 1997. En esa ocasión, el Juez Robles le indicó a la señora Rivera que las cosas estaban "calientes" y le pidió que le ayudara con el "casito". La ayuda consistía en que hablara con la señorita Pacheco para que la convenciera de que escribiera una carta diciendo que todo lo que ocurrió entre ellos fue un malentendido.

Ese mismo día, poco después de la primera llamada, el Juez Robles llamó nuevamente por teléfono a la señora Rivera para pedirle que le comunicara a la señorita Pacheco que cuando escribiera la carta se la enviara secretamente a la Jueza Administradora de la Región, Hon. Elba Rosa Rodríguez Fuentes. La señora Rivera no hizo lo que el Juez Robles le pidió.

La tercera llamada ocurrió el 8 de septiembre de 1997. En esa ocasión, el Juez Robles le preguntó a la señora Rivera si había hablado con la señorita Pacheco para que reiterara las acusaciones. Cuando la señora Rivera le informó que no había cumplido con lo pedido por el Juez Robles, éste le enganchó el teléfono.

7. Conforme al testigo de la parte querellada, Lic. Ricardo Negrón Rodríguez, quien testificó cándidamente ante la Comisión, el querellado no es un ser perfecto; le gustan las mujeres y cuando a éste alguien le gusta, no lo oculta, no lo disimula.

A la luz de estas determinaciones de hechos, la Comisión de Disciplina y Separación concluyó que la conducta imputada a Melvin Robles Sanabria constituía hostigamiento sexual en la modalidad de ambiente hostil y en la modalidad de "quid pro quo". Asimismo, concluyó que su conducta fue contraria a los Cánones de Ética Judicial. Finalmente, la Comisión recomendó mayoritariamente la destitución de Melvin Robles Sanabria como Juez Municipal.[2]

Luego de evaluar la querella formulada por el Procurador General, la prueba desfilada ante la Comisión y el derecho aplicable, resolvemos.

II

A.

En 1988, la Legislatura de Puerto Rico aprobó la Ley Núm. 17 de 22 de abril de 1988, 29 L.P.R.A. secs. 155 et seq. , (en adelante, Ley 17), en la cual estableció la política pública del Estado Libre Asociado de Puerto Rico con relación al hostigamiento sexual en el empleo. Dicha ley establece que el hostigamiento sexual en el empleo constituye "una forma de discrimen por razón de sexo y como tal constituye una práctica ilegal e indeseable que atenta contra el principio constitucional de que la dignidad del ser humano es inviolable". 29 L.P.R.A. sec. 155. Resulta claro, por tanto, que esta política pública postulada en la Ley 17 está cimentada en disposiciones

---

[2] Únicamente concurrió uno de los Comisionados, quien a pesar de coincidir con las determinaciones de hechos de la Comisión de Disciplina y Separación, estimó que la sanción debía limitarse a una suspensión de empleo y sueldo por el término de seis meses.

constitucionales que propugnan el respeto a la dignidad humana y la igualdad ante la ley. Const. de P.R., Art. II, sec. 8.

En específico, el Artículo 3 de dicha ley define el hostigamiento sexual en el empleo en los siguientes términos:

> [e]l hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual, cuando se da una o más de las siguientes circunstancias:
>
> (a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.
> (b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.
> (c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de una persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo. 29 L.P.R.A. sec. 157.

En el pasado, y al considerar una controversia cuyos hechos se originaron previo a la vigencia de la Ley 17, reconocimos que "el hostigamiento sexual constituye una modalidad del discrimen por razón de sexo proscrito por la Ley Núm. 100". Rodríguez Meléndez v. Sup. Amigo, Inc. , 126 D.P.R. 117, 124 (1990). En esa ocasión, al examinar, con fines comparativos, jurisprudencia federal sobre el tema, destacamos que el hostigamiento sexual puede manifestarse de dos formas: el hostigamiento sexual por ambiente hostil y el hostigamiento equivalente o "quid pro quo". Id. , en la pág. 131.

Señalamos que la primera vertiente del hostigamiento sexual, --al cual se refiere el tercer inciso del artículo 3 de la Ley 17--, queda configurada cuando la conducta hacia una persona por razón de su sexo tiene el efecto de interferir irrazonablemente con el desempeño de su trabajo "o de crear en el mismo un ambiente intimidante, hostil u ofensivo". Id. , en las págs. 132-131; véanse, López Campos v. Garaje Isla Verde, 126 D.P.R. 166 (1990); Delgado Zayas v. Hospital Interamericano, 94 JTS 149 (1994). Ello ocurre independientemente de que no exista menoscabo económico alguno en la alegada víctima o de que

la conducta no sea explícitamente sexual. Basta que la conducta que se imputa como constitutiva de hostigamiento se origine por razón del sexo de la persona y que la misma cree unas circunstancias en el empleo que alteren significativamente las condiciones de trabajo.

Para establecer un caso prima facie de hostigamiento sexual por ambiente hostil, la parte promovente de la acción "debe probar que ha ocurrido más de un incidente de conducta sexual ofensiva". Ruth E. Ortega Vélez, Hostigamiento Sexual en el Empleo 21 (1998). Un acto aislado o un mero "piropo", aunque pudiera ser no deseado, no origina una causa de acción bajo esta modalidad. Heelan v. Johns-Manville Corp. , 451 F. Supp. 1382, 1388 (1978). De ahí que se diga que "[e]l hostigamiento por ambiente abusivo se caracteriza por su multiplicidad". Ruth E. Ortega Vélez, supra, en la pág. 21.[3]

Al evaluar una reclamación bajo esta modalidad, además, el juzgador debe examinar "si la alegada conducta constitutiva de hostigamiento fue lo suficientemente severa y ofensiva como para alterar las condiciones de empleo y crear un ambiente de trabajo abusivo". Id. en la pág. 132. Es preciso demostrar que la conducta desplegada hacia la alegada víctima por razón de su sexo crea una atmósfera hostil, intimidante u ofensiva, o que el ambiente laboral creado por las actuaciones hacia su persona por razón de su sexo, interfieren de forma irrazonable con el sano desempeño de su trabajo. En esta evaluación es necesario examinar las circunstancias involucradas, especialmente, y sin pretender ser exhaustivos, la frecuencia e intensidad de los alegados actos hostigantes, el contexto en el cual ocurren, y el período de tiempo durante el cual se prolongan.

Por su parte, el hostigamiento sexual equivalente --al cual se refieren los primeros dos incisos del artículo 3 de la Ley 17--, "se produce cuando el sometimiento o rechazo de los avances o

---

[3] Véase además, Schultz, Vicki, Reconceptualizing Sexual Harrassment, 107 Yale Law Journal 1683 (1998).

requerimientos sexuales se toma como fundamento para afectar beneficios tangibles en el empleo". Id. , en la pág. 132. De este modo, es resultado directo del desbalance de poder entre el supuesto hostigador y su víctima.

Hemos afirmado en el pasado que, conforme a esta modalidad, "se requiere que el demandante pruebe la solicitud de favores sexuales o el sufrimiento de avances de igual tipo, y que el sometimiento o rechazo a dichos avances o a la referida solicitud haya sido la causa de una decisión adversa en cuanto a una condición o al término de su empleo". Id. , en la pág. 132. Asimismo, se configura esta modalidad si la alegada víctima demuestra que las deficiencias en el desempeño de sus funciones que finalmente motivan su despido o renuncia son resultado directo del ambiente hostil causado por los avances de índole sexual.

B.

Mediante el memorando Núm. 117 de 2 de marzo de 1988, el Poder Judicial estableció su propia política pública en torno al hostigamiento sexual en el empleo, la cual, en esencia, es consecuente con el esquema y lineamientos establecidos por los poderes políticos en la Ley 17. Su finalidad, al igual que en el contexto de la Ley 17, es proscribir el hostigamiento sexual en el empleo en sus distintas modalidades y establecer un procedimiento administrativo para atender las quejas de las personas que consideran haber sido víctimas de este tipo de conducta en sus centros de trabajo. Esta política pública del Poder Judicial se ampara, no sólo en claros preceptos constitucionales que están, a su vez, recogidos en la política pública del Estado sobre el hostigamiento sexual, sino también en la Ley Núm. 64 del 31 de mayo de 1973, que crea un sistema de personal autónomo para el Poder Judicial basado en el principio del mérito que excluye de los procesos de personal cualquier consideración de carácter discriminatoria.

Al proscribir el hostigamiento sexual en la Rama Judicial, este Memorando destaca que tal conducta no será tolerada independientemente

de la jerarquía o posición de la persona actora. Tampoco excluye del ámbito de su protección a empleados que no tengan expectativa de continuidad en el empleo, ya sea por tratarse de empleados de confianza o de empleados en período probatorio. Asimismo, impone responsabilidades, establece medidas para prevenirlo y establece el procedimiento que deberá ser seguido para presentar una querella administrativa por hostigamiento sexual.[4]

Por otro lado, la política pública de la Rama Judicial en torno al hostigamiento sexual en el empleo plasmada en el Memorando Núm. 117 se complementa con los lineamientos y recomendaciones de la "Comisión Judicial Especial para Investigar el Discrimen por Género en los Tribunales de Puerto Rico". El informe rendido por esta Comisión en agosto de 1995 contiene recomendaciones específicas para erradicar de la Rama Judicial de Puerto Rico estereotipos y patrones culturales sexistas, así como todo tipo de trato discriminatorio por razón del género. Véase, El Discrimen por Razón de Género en los Tribunales, Comisión Judicial Especial para Investigar el Discrimen por Género en los Tribunales de Puerto Rico, Agosto 1995. Esas recomendaciones han sido sustancialmente adoptadas por este Tribunal e implantadas en toda la estructura de la Rama Judicial, tanto en su vertiente administrativa y de personal, como en los procesos judiciales en los que interviene la ciudadanía. Véase, In re, Valcárcel Mulero, res. 15 de noviembre de 1996, 142 D.P.R. ___ (1996).

A la luz de toda la discusión precedente, es propio afirmar que el marco constitucional, legal, y reglamentario aplicable al Poder

---

[4] En cuanto al procedimiento para presentar una querella contra un funcionario de la Rama Judicial, el Memorando dispone que toda querella deberá ser remitida por escrito y bajo juramento a la oficina del Director Administrativo de los Tribunales. Asimismo, puede ser presentada personalmente en la Oficina del Director de la Oficina de Asuntos Legales de la Administración de Tribunales. Una vez presentada la querella, su evaluación será realizada de conformidad con la Sección II de las "Normas para la investigación de quejas y querellas contra funcionarios de la Rama judicial". Compete al Director Administrativo de los Tribunales hacer la determinación final sobre la acción que deberá ser tomada y hará la notificación al querellante que corresponda.

Judicial que proscribe el hostigamiento sexual en el empleo, impone en este Tribunal la obligación de evaluar cuidadosamente cualquier alegación fundamentada de esta naturaleza y que provenga de un empleado de la Rama Judicial. Ahora bien, en el caso especial de los jueces, las imputaciones y querellas de hostigamiento sexual están, a su vez, matizadas por los Cánones de Ética Judicial, supra, los cuales, como se sabe, rigen la conducta de los jueces en el ejercicio de su responsabilidad profesional y moral en nuestra sociedad. Se trata, pues, del marco ético mínimo bajo el cual podrá ser evaluada cualquier imputación en contra de los jueces que laboran en el Tribunal General de Justicia de Puerto Rico.

C.

Recientemente, enmendamos los Cánones de Ética Judicial con el claro objetivo "de prohibir expresamente toda manifestación de discrimen por parte de la judicatura", In re, Enmiendas a los Cánones de Ética Judicial, res. 12 de noviembre de 1999; 99 TSPR 170; 149 D.P.R. ___ (1999), incluyendo el discrimen por razón de sexo manifestado a través del hostigamiento sexual. Con ese fin, enmendamos el Canon XI de los de Ética Judicial para advertir a la judicatura de que "[e]n el ejercicio de su labor judicial [...] no deberá incurrir en conducta constitutiva de discrimen por motivo de raza, color, nacimiento, origen, condición socioeconómica, ideas políticas o religiosas, condición física, edad o género". Canon XI de los de Ética Judicial, 4 L.P.R.A. Ap. IV-A C. XI, según enmendado por In re, Enmiendas a los Cánones de Ética Judicial, supra, (subrayado nuestro).

Aunque al momento de los hechos que originan la querella contra Robles Sanabria no existía este deber de forma expresa, es evidente que el hostigamiento sexual siempre ha sido una de las conductas proscritas para los miembros de la judicatura. De hecho, bajo el marco legal existente al momento de la ocurrencia de los hechos que desembocan en

la querella, el hostigamiento sexual en el empleo constituía una actuación ilegal bajo la Ley 17 y bajo las disposiciones constitucionales que protegen la dignidad del ser humano y garantizan la igualdad ante la ley. Por lo tanto, si un juez incurría en ese tipo de conducta violaba la ley y los Cánones de Ética Judicial en aquella parte que imponen a la judicatura la obligación de cumplir con las normas de conducta establecidas por ley, Canon I de los de Ética Judicial, 4 L.P.R.A. Ap. IV-A C. I, y el deber de responder a normas de conducta "que honren la integridad e independencia de su ministerio y estimulen el respeto y la confianza en la judicatura". Id. , Canon XXVI.

III

Conforme a las determinaciones de hechos de la Comisión de Disciplina y Separación, las cuales están plenamente avaladas por las declaraciones juradas y demás documentos que obran en el expediente del caso, luego de tres meses de estar laborando como Secretaria Auxiliar I del Tribunal de Primera Instancia en la Sala Municipal de Peñuelas, el querellado Robles Sanabria reiteradamente invitó a almorzar a solas a la señorita Pacheco. Además le preguntó sobre sus actividades sociales fuera de horas laborables, constantemente la llamó "mi amor", "mi cielo", o "mi corazón", y en repetidas ocasiones miró todo su cuerpo de forma inapropiada. La señorita Pacheco narró que en una ocasión Robles Sanabria le expresó, con relación al traje que traía puesto, lo siguiente: "ese traje te queda muy bien, pero debes cuidarte tu dieta porque se te están haciendo unas neguitas (sic)". Deposición de Nelly Pacheco Dominicci, en la pág. 3.

En otra ocasión, al preguntarle a Pacheco qué había hecho durante el fin de semana y ésta contestarle que había estado con su novio, el querellado Robles Sanabria le dijo: "no me digas eso porque me pongo celoso". Id. , en la pág. 10.

Pacheco añadió que el querellado Robles Sanabria se sentaba frente a su escritorio y la miraba de una forma incomodante y en una ocasión

le dijo que tenía "piernas bonitas". En otra ocasión le preguntó si usaba minifaldas y por qué no usaba mahones en el trabajo.

Pacheco expresó en su deposición que toda esta situación la ponía muy incómoda y temerosa. Indicó que le molestaba llegar al trabajo y que, aunque deseaba comunicarle su sentir al juez querellado y al Juez Administrador de la región, tenía temor de que fuera evaluada desfavorablemente si expresaba su sentir, toda vez que no era empleada regular y llevaba poco tiempo en el puesto.

Luego de evaluar las determinaciones de hechos de la Comisión de Disciplina y Separación y los demás documentos que obran en el expediente del caso, es forzoso coincidir con el criterio mayoritario de la Comisión en términos de que el querellado Robles Sanabria incurrió en conducta constitutiva de hostigamiento sexual en el empleo. No es necesario, como sugiere el querellado, hacer insinuaciones específicas de índole sexual, utilizar vocabulario que tenga connotaciones sexuales o algún tipo de contacto físico para que se configure el hostigamiento sexual en el empleo. A nuestro juicio, los hechos que estimó probados la Comisión de Disciplina y Separación configuran el hostigamiento sexual en el empleo en su modalidad de ambiente hostil.[5]

Los actos constitutivos de hostigamiento sexual fueron actuaciones reiteradas contra la señorita Pacheco por razón de su sexo. Dichas actuaciones consistieron en comentarios sobre la figura, vestimenta y maquillaje de Pacheco, acercamientos insistentes para que salieran a almorzar a solas y miradas inapropiadas. Todo esto interfirió con el sano desempeño de Pacheco en su lugar de trabajo y le crearon un ambiente de trabajo ofensivo, hostil y humillante.

---

[5] Contrario al criterio de la Comisión de Disciplina y Separación, no nos parece que la modalidad de hostigamiento sexual equivalente o "quid pro quo" haya quedado configurada en el presente caso. La prueba revela que, aunque la señorita Pacheco estimaba que su permanencia en el puesto corría peligro si rechazaba los insistentes avances de Robles Sanabria, éste nunca tomó una decisión o realizó actuación alguna que afectara adversamente su puesto, ni hubo conducta alguna que en forma implícita o explícita se convirtiera en una condición de su empleo.

Dramatiza esto, el hecho de que toda esta situación ocurre contra una persona recién empleada en la Rama Judicial, en una sala del Tribunal de Primera Instancia relativamente aislada, que contaba con sólo dos empleadas asignadas, --además del Juez Robles Sanabria--, una de ellas lo era la señorita Pacheco. Dadas estas circunstancias, es evidente que Robles Sanabria se aprovechó de la situación de desventaja en la que se encontraba la querellante Pacheco.

Por otro lado, es preocupante que Robles Sanabria, realizó ciertos actos dirigidos contra su compañera Jueza Honorable Joanne Vega, que, a juicio de las personas que realizaron las investigaciones de rigor, también pudieran ser constitutivas de hostigamiento sexual. Así, se desprende del Informe de la Comisión de Disciplina y Separación que Robles Sanabria le comentó a la Jueza que el traje que ésta tenía puesto "le resultaba atractivo" y que "le gustaría compartir con ella luego de las horas laborables". Además le preguntó si la podía llamar "mi amor" y si le interesaba almorzar con él a solas.

Finalmente, además de la conducta constitutiva de hostigamiento sexual, nos consterna el hecho de que el querellado Robles Sanabria, luego de iniciadas las investigaciones administrativas, se comunicó en dos ocasiones con la señora Myriam Rivera al tribunal de Peñuelas para solicitarle que hablara con la señorita Pacheco para que ésta, a su vez, redactara una carta en la que expresara su interés de retirar cualquier acusación de su parte en contra de Robles Sanabria y afirmara que todo lo acontecido había sido sólo un malentendido de su parte. Esto es claramente contrario a lo dispuesto en las "Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces de Primera Instancia y del Tribunal de Apelaciones de Puerto Rico".

IV

Al resolver que Robles Sanabria incurrió en hostigamiento sexual en su modalidad de ambiente hostil contra la señorita Pacheco, es

evidente que, a su vez, violó los principios éticos encarnados en los Cánones de Ética Judicial. Los cargos imputados por el Procurador General, que señalaban que había violado los Cánones I, V, y XXVI estaban plenamente justificados.[6]    Con su conducta Robles, Sanabria

_____

[6] Los referidos Cánones disponían a la fecha de la comisión de los hechos, lo siguiente:

    Canon I
       La fe de un pueblo en la justicia, como valor esencial de la democracia debe ser mantenida por los tribunales a los más altos niveles de la responsabilidad pública.
       En el ejercicio de su delicada función, aquéllos llamados a impartir justicia, conscientes de la posición que ocupan en la sociedad y de la trascendencia de su misión, deben velar por que sus actuaciones respondan a normas de conducta que honren la integridad e independencia de su ministerio y estimulen el respeto y la confianza en la judicatura.

    Canon V
       El Juez cumplirá cuidadosa y diligentemente las obligaciones administrativas que le imponen las leyes y reglamentos aplicables a la Rama Judicial y las instrucciones de la Oficina de la Administración de los Tribunales.

    Canon XI
       El Juez no solamente ha de ser imparcial, sino que su conducta ha de excluir toda posible apariencia de que es susceptible de actuar a base de influencias de personas, grupos o partidos, o de ser influido por el clamor público, por consideraciones de popularidad o notoriedad, o por motivaciones impropias. Ha de tener siempre presente que su único empeño debe ser el de impartir justicia de conformidad con el Derecho aplicable, con absoluta ecuanimidad, y sin preocuparle el reconocimiento que pueda darse a su labor, ni la crítica injusta.
       El Juez hará todo lo posible para que los funcionarios y empleados del tribunal que actúen bajo su dirección actúen de conformidad con estos principios en la medida en que sean aplicables a sus labores.

    Canon XXVI
       Los anteriores cánones de ética judicial son normas mínimas de comportamiento que todo Juez debe observar fielmente, tanto en su letra como en su espíritu, por ser consustanciales con el cargo judicial, Estos cánones no excluyen otras normas de conducta que también obligan al Juez, que están establecidas por ley o que son inherentes al honor tradicional de la judicatura.

4 L.P.R.A: Ap. IV-A C. I, V, XI y XXVI.

Estimamos que de los hechos que estimó probados la Comisión de Disciplina y Separación no se configura una violación al Canon XI de los de Ética Judicial, el cual impone a los magistrados la obligación de obrar con total imparcialidad en el ejercicio de sus funciones judiciales. En el presente caso, las actuaciones del magistrado Robles Sanabria se dan en el contexto de sus relaciones de trabajo con

deshonró la integridad e independencia de su ministerio (Canon I); incumplió con sus obligaciones administrativas aplicables a la Rama Judicial y las instrucciones de la OAT que específicamente prohiben el hostigamiento sexual en el empleo, (Canon V); e incumplió claramente con lo dispuesto en las leyes de Puerto Rico y en las normas inherentes al honor tradicional de la judicatura, (Canon XXVI). Ante ello, y la gravedad de las actuaciones del querellado, nos vemos compelidos a ejercer nuestra jurisdicción disciplinaria.

Como se sabe, nuestra jurisdicción disciplinaria en el contexto específico de los jueces, es de rango constitucional. Al respecto, la sección 11 del Artículo V de la Constitución del Estado Libre Asociado de Puerto Rico dispone expresamente que los jueces de los tribunales de menor jerarquía "podrán ser destituidos por el Tribunal Supremo por las causas y mediante el procedimiento que se disponga por ley".[7] Const. P.R., Art. V, Sec. 11. Conforme a este poder, y a la luz de la prueba con que contamos nos vemos precisados a decretar la destitución inmediata de Melvin W. Robles Sanabria como Juez Municipal.

La severidad de la sanción que hoy imponemos a Robles Sanabria se fundamenta no sólo en sus actuaciones constitutivas de hostigamiento sexual en la modalidad de ambiente hostil. Es también resultado del hecho de que su conducta fue lesiva a la integridad institucional de

---

funcionarios de la Rama Judicial. Nada hay en la prueba que revele que omitió su deber de ser imparcial en la adjudicación de una controversia judicial.

[7] La Ley de la Judicatura de 1994, Plan de Reorganización de la Rama Judicial Núm. 1 de 1994, según enmendado, expresamente reconoce esta facultad y delega en este Tribunal la función de diseñar un reglamento para tramitar acciones disciplinarias contra jueces y de separación del servicio por razón de salud. Artículo 8.001, Plan de Reorganización de la Rama Judicial Núm. 1. Nuestras "Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal De Apelaciones de Puerto Rico" son consecuentes con esta encomienda. Estas reglas son, pues, el marco procesal aplicable en la tramitación de las querellas instadas contra los jueces del Tribunal General de Justicia, incluyendo las que involucren hostigamiento sexual en el empleo por parte de éstos. En el contexto de alegaciones de hostigamiento sexual por personas que no sean jueces aplica, por tanto, el procedimiento establecido en el memorando Núm. 117.

nuestro sistema de justicia. Ello, en el caso de jueces, e independientemente de cualquier otra consideración, conlleva la imposición de sanciones disciplinarias severas.

Asimismo, Robles Sanabria incurrió en una seria violación de la Regla 13 (B) (4) de las "Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces de Primera Instancia y del Tribunal de Apelaciones de Puerto Rico", la cual de forma expresa impone a los jueces contra quienes se realiza un procedimiento a su amparo, la obligación de abstenerse de realizar gestiones que constituyan o puedan ser consideradas intervenciones indebidas con testigos.[8] Sus gestiones para lograr que la señorita Pacheco cambiara su versión de lo acontecido, luego de que iniciaran las investigaciones en su contra, fueron claramente deshonestas.

Por último, su actuación contra la Honorable Juez Vega en otra sala de los tribunales demuestran claramente un patrón de conducta que denotan una falta de prudencia y respeto hacia sus compañeras de trabajo y a sus posiciones.

Dentro de nuestra organización política, social y jurídica, la figura del juez ocupa un lugar de singular importancia. Su función, única en nuestro ordenamiento constitucional, requiere de ellos no tan sólo que sean íntegros y honestos en su función de interpretación y aplicación del derecho, sino en todo el ámbito de su conducta profesional, lo cual incluye su relación con sus compañeros, empleados y subalternos. Su nombramiento es producto del consenso entre las ramas legislativa y ejecutiva del gobierno, las cuales depositan en

---

[8] Dispone la Regla 13 B (4):

Durante el proceso investigativo el juez promovido tendrá la responsabilidad de:

[...]
(4) abstenerse de realizar gestiones que constituyan o puedan ser consideradas intervenciones indebidas con testigos, prueba documental o de cualquier otra naturaleza, [...].

ellos la confianza de nuestro pueblo con la esperanza de que la administración de la justicia se lleve a cabo por personas cuya conducta, en todos sus aspectos, sea intachable. La severidad de la sanción está, pues, plenamente justificada.

Se emitirá la Sentencia correspondiente.

ellos la confianza de nuestro pueblo con la esperanza de que la administración de la justicia se lleve a cabo por personas cuya conducta, en todos sus aspectos, sea intachable. La severidad de la sanción está, pues, plenamente justificada.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Hon. Melvin Robles Sanabria

  Juez Municipal

AD-98-02

SENTENCIA

San Juan, Puerto Rico, a 22 de junio de 2000.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se decreta la destitución del querellado Melvin Robles Sanabria del cargo de Juez Municipal del Tribunal de Primera Instancia. Dicha destitución será efectiva a partir de la fecha de notificación de esta Sentencia.

Notifíquese a la Directora de la Oficina de Administración de los Tribunales.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo