Opinión disidente emitida por el
Juez Asociado Señor Rivera Pérez.
Disentimos de la Mayoría, ya que no compartimos su criterio interpretativo en torno a la responsabilidad del pa *490 trono por actos de hostigamiento sexual entre empleados. Veamos.
I
El 20 de mayo de 1996, la Sra. Ada Albino Agosto (señora Albino) comenzó a trabajar como cajera en la tienda de ropa conocida por el nombre de “Nineteen Ninety Five” ($19.95), ubicada en Corozal. Dicha tienda era parte de una serie de establecimientos dedicados, entre otras cosas, a la venta de ropa de caballeros, pertenecientes a la corporación Angel Martínez, Inc. (el patrono), cuyo presidente era el Sr. Ángel Martínez (señor Martinez).(1) En agosto de ese mismo año, la señora Albino fue ascendida al puesto de gerente de la tienda $19.95 de Corozal. Como parte de su función gerencial, la señora Albino supervisaba directamente a la Sra. María Bernard (señora Bernard), empleada de piso de la tienda de Corozal. El Sr. William Otero (señor Otero) era el supervisor directo de ambas, mientras que el Sr. Ramón Orsini (señor Orsini) fungía como contador de las operaciones comerciales del patrono. Aunque la señora Albino y el señor Orsini trabajaban para el mismo patrono, laboraban en tiendas distintas y distantes, pues este último tenía su oficina en la tienda $19.95 de Vega Baja.
Tal como lo estipularan las partes y a tenor con las determinaciones de hecho del foro primario, la señora Albino y el señor Orsini se comunicaban por teléfono frecuentemente y se veían aproximadamente una vez al mes en reuniones de trabajo y otras actividades del patrono.(2)
*491 Entre junio y julio de 1996, la señora Albino solicitó del patrono un adelanto de salario de $350 para costear unas pruebas médicas de su hija menor, ordenadas, presumiblemente, a causa de un envenenamiento que alegadamente sufrió y por el que la señora Albino y su esposo presentaron una acción judicial en representación y beneficio de la menor.(3) El señor Orsini contestó la petición, para indicarle que el patrono no permitía el pago adelantado del salario, pero que él podía prestarle el dinero en su carácter personal. Así lo hizo. Posteriormente, la señora Albino tomó prestados otros $150 del señor Orsini para costear unos materiales escolares de su hija. Ambas deudas fueron saldadas por la señora Albino en febrero de 1997. En sus determinaciones de hecho, el Tribunal de Primera Instancia indicó que, en febrero de 1997, el señor Orsini le solicitó a la señora Albino que le pagara el dinero adeudado, pero que, ante esta situación, la señora Albino se molestó.(4)
Tal como lo recoge las determinaciones de hecho del foro primario, luego de efectuados los préstamos, la relación entre la señora Albino y el señor Orsini cambió. En agosto de 1996, con motivo de una reunión de ventas del patrono en el almacén $19.95 de Corozal, el señor Orsini le tocó las manos a la señora Albino, a la vez que le miraba los senos *492 y abría los ojos como queriéndola tocar. Mientras esto ocurría, le hacía comentarios, tales como “qué bien te queda ese traje”, a la vez que le indicaba que “tenía unas nalgas bonitas”, todo esto mientras se tocaba sus partes genitales. De acuerdo con la prueba creída por el foro primario, esta conducta se repitió en dos o tres ocasiones durante agosto de 1996.(5) Además, surge de las referidas determinaciones de hecho que en una ocasión, en una conversación telefónica, el señor Orsini le comentó a la señora Albino que él le podía “sobar las nalguitas”, al ésta manifestarle que se “había caído” en la proyección de las ventas. Se desprende de las determinaciones, además, que en diversas ocasiones el señor Orsini le comentó a la señora Albino lo bien que le quedaban los vestidos que ésta utilizaba para el trabajo. No obstante, surge de la exposición narrativa de la prueba estipulada, concretamente del testimonio de la señora Bernard, que cuando el señor Orsini visitaba la tienda $19.95 de Corozal, éste le comentaba a la señora Bernard “usted está bien bonita”, a lo que ella replicaba “usted está también guapo”, y que cuando la señora Albino presenciaba este intercambio, le preguntaba al señor Orsini “¿ella nada más, y yo?”, a lo que el señor Orsini le respondía que ella también estaba bonita.(6)
El 19 de septiembre de 1996, luego de efectuada una reunión de gerentes en la oficina del señor Martínez en Vega Baja, la señora Albino le solicitó al señor Orsini la entrega de una mercancía que faltaba en la tienda de Corozal. Mientras estaban en la oficina del señor Orsini, éste le dijo en voz baja “quédate conmigo que estoy solo”. La señora Albino se negó y le indicó que en su casa la esperaban su marido e hijos. Luego de que ocurriera este incidente, ese mismo día, el señor Orsini invitó a la señora Albino a que se fueran a pasar todo el día a Caguas, o a comer, mientras otra empleada se hacía cargo de la tienda. *493 La señora Albino se negó y tomó estos comentarios como propuestas de carácter sexual.(7)
Surge de las determinaciones de hecho del foro primario que para esta época, o sea, durante septiembre de 1996, la señora Albino se sentía nerviosa y con mucha presión, temerosa de que el señor Orsini la tocara o le hiciera comentarios de índole sexual. Por tal motivo, la señora Albino rebajó de peso, comenzó a usar ropa más grande y tenía un aspecto demacrado. No obstante, con relación a la vestimenta de la señora Albino, surge de la exposición narrativa de la prueba estipulada, concretamente del testimonio de la señora Bernard, que cuando la señora Albino comenzó a trabajar en $19.95 en mayo de 1996, ésta vestía mahones, camisas de manga larga por fuera, ropa ancha y larga y que, a medida de que la señora Bernard y la señora Albino se hicieron amigas, esta última comenzó a vestirse como aquélla, con ropa más corta y entallada, utilizando faldas cortas los viernes. Según la señora Bernard, la señora Albino utilizó este tipo de ropa hasta marzo de 1997, fecha cuando dejó de trabajar para el patrono.(8) Para esta misma época, la señora Bernard le contó a la señora Albino que el señor Orsini la llamaba a su casa y la invitaba a salir, diciéndole que ella no tenía que trabajar, ya que él la podía mantener.
Surge de las determinaciones de hecho del foro primario que, para el 16 ó 17 de octubre de 1996, la señora Albino le notificó a su supervisor, el señor Otero, el problema que tanto ella como la señora Bernard tenían con el señor Orsini, por los piropos y acercamientos de naturaleza sexual que éste les hacía. Ese mismo día, el señor Otero notificó la situación al señor Martínez. Al día siguiente, durante una reunión de gerentes celebrada en Caguas, la señora Albino *494 notificó una vez más, esta vez al señor Martínez, de la conducta hostigadora del señor Orsini. Surge de la exposición narrativa de la prueba estipulada que, luego de que comenzaran los actos de hostigamiento sexual del señor Orsini, la señora Albino le dio instrucciones a la señora Bernard de que anotara todo y llevara un diario de lo que aquél decía cuando visitaba la tienda $19.95 de Corozal, ya que eso, según el parecer de la señora Albino, constituía hostigamiento.(9)
Al enterarse de la situación, el señor Martínez reconoció y le manifestó a la señora Albino que se trataba de una situación preocupante y le preguntó si deseaba que despidiera al señor Orsini. Ésta le indicó que eso no le competía a ella, sino a él como dueño de la empresa. Le expresó que lo que ella quería era que cesara el hostigamiento y que el señor Orsini dejara de visitar la tienda de Corozal. Así las cosas, el señor Martínez le indicó que hablaría con el señor Orsini. Al día siguiente, el señor Martínez se reunió con las señoras Albino y Bernard para continuar la discusión del asunto. Surge de las determinaciones de hechos del Tribunal de Primera Instancia que el señor Martínez les comunicó a éstas que la conducta desplegada por el señor Orsini conllevaba su despido. Ante esta situación, la señora Albino le comunicó que ella no quería causarle daño al señor Orsini. Según se desprende de la sentencia emitida por el Tribunal de Primera Instancia, el señor Martínez concluyó que lo relatado por sus dos empleadas “era suficiente” y que constituía hostigamiento sexual.(10)
Así las cosas, el señor Martínez se reunió con su contable para relatarle lo que le habían manifestado las empleadas, procediendo a pedirle la renuncia. Según determinó el *495 foro primario, el señor Orsini, luego de “ponerse colorado”, negó que hubieran ocurrido los actos de hostigamiento, razón por la cual decidió no renunciar. El señor Martínez le comunicó que investigaría sobre el particular.(11)
Como consecuencia de las quejas de la señora Albino y la señora Bernard, el señor Martínez dio instrucciones a su secretaria personal, Sra. Sonia Cruz (señora Cruz), y al propio señor Orsini, para que se canalizaran los trabajos, así como las llamadas telefónicas entre las tiendas de Vega Baja y Corozal, a través de la señora Cruz o del propio señor Martínez. Esto para evitar el contacto entre la presunta víctima y su victimario. El señor Orsini aceptó estas instrucciones.(12)
Surge de la prueba creída por el foro primario que para fines de octubre y parte de noviembre de 1996, tal como solicitara la señora Albino, el señor Orsini dejó de visitar la tienda de Corozal. No obstante, a finales de noviembre de dicho año, la propia señora Albino, en calidad de gerente de la tienda $19.95 de Corozal, invitó al señor Orsini a un almuerzo de Acción de Gracias, celebrado en esa tienda. Fue alrededor de esa fecha que las conversaciones telefónicas entre ambos se reanudaron.
Asimismo, surge de las determinaciones de hecho del Tribunal de Primera Instancia, que, además de la invitación a la referida actividad, la señora Albino invitó al señor Orsini y al señor Martínez a la fiesta de cumpleaños de su hijo.(13) Incluso, surge de la prueba creída por el foro primario, que dos meses después de que la señora Albino se querellara de la conducta del señor Orsini, en diciembre de 1996, el señor Otero la observó riéndose mientras hablaba por teléfono con aquél. Como consecuencia de esto, el señor Otero le comunicó a la señora Albino lo siguiente: “no cu-ques el avispero después de lo que ha pasado.”
*496 El señor Otero le informó al señor Martínez de este incidente, y este último manifestó que iba a dialogar con el señor Orsini. Sobre el particular, le hizo llegar un mensaje a la señora Albino, a través del propio señor Otero, al efecto de que “cortaran la relación”(14)
Finalmente, surge de las determinaciones de hecho del Tribunal de Primera de Instancia que, en enero de 1997, la señora Albino, como parte de un intercambio de regalos entre empleados efectuado en una fiesta de Navidad, donde éstos se hacían bromas y travesuras, le regaló al señor Martínez dos muñequitos que estaban desnudos, uno de los cuales mostraba los genitales y tenía el dedo del corazón apuntando hacía arriba, mientras que el otro estaba “limpiándose con la lengua por fuera”.(15)
Del cuadro fáctico expuesto se desprende que la señora Albino, efectivamente, presentó una queja contra el señor Orsini ante su supervisor, el señor Otero, y directamente ante el señor Martínez. Surge, además, que posterior a la presentación de la queja, el patrono tomó medidas para que el señor Orsini no visitara la tienda de Corozal, así como para que los trabajos de dicha tienda se canalizaran a través de la señora Cruz o, en su defecto, directamente con el señor Martínez. No fue sino hasta que la señora Albino invitó al señor Orsini a la tienda $19.95 de Corozal para un almuerzo de Acción de Gracias, al cumpleaños de su hijo y luego de que la vieran riéndose mientras conversaba con éste, que éstos tomaron una actitud similar a la que existía antes de la presentación de la queja de hostigamiento sexual.
Ante todos estos eventos, debemos preguntarnos lo siguiente: Para noviembre y diciembre de 1996 ¿estaba el patrono en posición de inferir que la relación entre la señora Albino y el señor Orsini era de víctima y hostigador? ¿Tenía el patrono razones o motivos para dudar de la efectividad de la medida correctiva y cautelar empleada para *497 evitar el contacto entre la señora Albino y el señor Orsini? Más allá, debemos preguntarnos si, ante la totalidad de las circunstancias, el patrono podía concluir que las relaciones laborales entre la señora Albino y el señor Orsini se habían normalizado. Finalmente, debemos preguntarnos si la señora Albino debió informar al patrono que el señor Orsini había reanudado su conducta de avances sexuales, alegadamente no deseados.
Tal parece que ni el foro primario, ni el Tribunal de Apelaciones, ni la opinión mayoritaria toman en consideración la totalidad del cuadro fáctico a la hora de adjudicar responsabilidad al patrono.
Surge, además, de las determinaciones de hecho del Tribunal de Primera Instancia que para el 26 ó 27 de diciembre de 1996, después de que la señora Albino invitara al señor Orsini no sólo a la tienda de Corozal, sino al cumpleaños de su hijo, y luego de que la vieran riéndose con éste, el señor Martínez instruyó al señor Orsini para que visitara la tienda de Corozal para atender un descuadre, esto como parte de sus funciones como contable del patrono. En tal ocasión, el señor Orsini intentó besar a la señora Albino.(16) Del expediente no surge que la señora Albino informara al patrono sobre este incidente.
El 14 de marzo de 1997, la señora Albino presentó una demanda contra el patrono y el señor Orsini. Alegó, entre otras cosas, que la conducta del señor Orsini era constitutiva de hostigamiento sexual en el empleo y que el patrono era solidariamente responsable por los actos de aquél, ya que no había tomado medidas apropiadas y afirmativas para detenerlo. Solicitó que se le compensara por los daños y perjuicios sufridos como consecuencia de dicho hostigamiento.
El 7 de agosto de 1998, el Tribunal de Primera Instancia determinó que el señor Orsini incurrió en hostigamiento sexual en su modalidad de ambiente hostil y que el patrono no llevó a cabo una acción apropiada para corregir la *498 situación. Impuso responsabilidad solidaria al patrono y al señor Orsini, determinando que los daños y perjuicios sufridos por la señora Albino ascienden a la suma de $75,000, la cual se duplica por mandato estatutario. Además, el foro primario le impuso a los codemandados el pago solidario de $18,750 en concepto de las costas del litigio y los honorarios de abogado. Inconformes, los demandados acudieron ante el Tribunal de Apelaciones. El foro intermedio apelativo confirmó la Sentencia del Tribunal de Primera Instancia.
El 9 de marzo de 2001, el patrono, aquí peticionario, solicitó nuestra intervención mediante una petición de certiorari, la cual fue acogida en una segunda moción de reconsideración. Señaló, entre otras cosas, que el Tribunal de Apelaciones erró al no revocar la determinación del foro primario que le impone responsabilidad por los actos de hostigamiento sexual del señor Orsini, alegados por la señora Albino, y que le obliga a pagar una “exagerada” cantidad en concepto de daños y peijuicios. Intima, además, que la determinación del foro intermedio apelativo no está sustentada por las determinaciones de hecho del foro primario. Esboza que la sentencia en cuestión tiene el efecto de imponer responsabilidad absoluta al patrono en casos de hostigamiento sexual entre empleados, relevando a la víctima de su obligación de notificar al patrono sobre dichos actos. Veamos.
II
Hace casi dos décadas, la Asamblea Legislativa de Puerto Rico declaró como política pública que el hostigamiento sexual en el empleo es una forma de discrimen por razón de sexo que atenta contra el principio de la inviolabilidad de la dignidad humana.(17) Por tal razón, se aprobó la Ley Núm. 17 de 22 de abril de 1988 (Ley Núm. 17), que *499 prohíbe el hostigamiento sexual en el empleo, impone responsabilidades y fija las penalidades por su ocurrencia.(18)
Dicha legislación define el hostigamiento sexual en el empleo de la manera siguiente:
El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual, cuando se da una o más de las siguientes circunstancias:
(a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.
!b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.
(c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo. (Enfasis suplido.)(19)
Es conocido que el hostigamiento sexual en el empleo tiene dos modalidades. Por un lado, los citados incisos (a) y (b) del Art. 3 de la Ley Núm. 17 (29 L.P.R.A. sec. 155b) se refieren a la modalidad de hostigamiento equivalente o quid pro quo, mientras que el inciso (c) se refiere al hostigamiento sexual en su modalidad de ambiente hostil.(20)
Hemos determinado que el hostigamiento sexual en su modalidad de ambiente hostil, implica una conducta de naturaleza sexual por parte del hostigador que interfiere irrazonablemente con el desempeño del empleado en su trabajo, o que es lo suficientemente severa y ofensiva como *500 para crearle un ambiente de trabajo intimidante, hostil y ofensivo.(21)
La Ley Núm. 17, supra, dispone, entre otras cosas, que para hacer una determinación de hostigamiento sexual en el empleo se debe considerar la totalidad de las circunstancias en que ocurrieron los hechos. La ley requiere que la determinación de la legalidad de una conducta se fundamente en los hechos de cada caso en particular.(22) Para evaluar una demanda de hostigamiento sexual en su modalidad de ambiente hostil es imprescindible que el juzgador de los hechos tome en cuenta el impacto que sobre el reclamante ha tenido el marco total del ambiente donde se ha desarrollado el proceso de la actuación discriminatoria.(23)
Hemos resuelto que para atender reclamaciones de esta índole, conforme al estándar de la totalidad de las circunstancias, debemos examinar factores como la naturaleza de la conducta alegada, su frecuencia e intensidad, el contexto en el que ocurre, su duración y la conducta y circunstancias personales de la alegada víctima.(24)
La Ley Núm. 17, supra, dispone el tipo de responsabilidad, si alguna, que recae sobre el patrono por los actos de hostigamiento sexual en el empleo. La referida legislación distingue entre dos tipos de responsabilidad patronal: (1) cuando los actos de hostigamiento sexual son cometidos por el patrono, sus agentes o supervisores, y (2) cuando éstos ocurren entre empleados.
En el primero de los casos, cuando el victimario es el patrono, sus supervisores o agentes, dicha pieza legislativa preceptúa, en su parte pertinente, de la manera siguiente:
Un patrono será responsable de incurrir en hostigamiento *501 sexual en el empleo por sus actuaciones y las actuaciones de sus agentes o supervisores, independientemente de si los actos específicos objeto de controversia fueron autorizados o prohibidos por el patrono e independientemente de si el patrono sabía o debía estar enterado de dicha conducta.
Se examinará la relación de empleo en particular a los fines de determinar si la persona que cometió los actos de hostigamiento sexual actuó en su capacidad de agente o supervisor del patrono. (Énfasis suplido.)(25)
Por otro lado, cuando se trata de actos de hostigamiento sexual entre empleados del patrono, la Ley Núm. 17, supra, dispone lo siguiente:
Un patrono será responsable por los actos de hostigamiento sexual entre empleados en el lugar de trabajo si el patrono o sus agentes o sus supervisores sabían o debían estar enterados de dicha conducta, a menos que el patrono pruebe que tomó una acción inmediata y apropiada para corregir la situación. (Énfasis suplido.)(26)
Se colige de lo anterior que, como paso previo a la determinación de que el patrono responde por los actos de hostigamiento sexual acaecidos en el taller de trabajo, se debe atender cuál es la relación laboral entre la víctima y el presunto hostigador. Esto es así, ya que la referida legislación distingue entre los actos de hostigamiento sexual acaecidos entre el patrono, sus agentes o supervisores, y un empleado de los actos de hostigamiento sexual ocurridos entre empleados.
Esto contrasta con lo expresado por la Mayoría, a los efectos de que aplica una norma similar de responsabilidad patronal entre los actos de hostigamiento sexual cometidos por el patrono, sus supervisores o agentes, y aquellos actos de hostigamiento sexual ocurridos entre empleados.(27)
*502 Este asunto es medular para dirimir la controversia, ya que, cuando se trata de actos de hostigamiento sexual ocurridos entre empleados, el patrono no es responsable si demuestra: (1) que ni él, ni sus agentes o supervisores sabían o debían saber de dichos actos, y (2) que estando al tanto de ellos, tomó medidas inmediatas y apropiadas para corregir la situación. Claramente no aplica una norma similar
El estándar o escrutinio cuando el hostigamiento sexual ocurre entre el patrono, sus agentes o supervisores y un empleado, es de responsabilidad absoluta que no permite defensas afirmativas; de ahí el uso del vocablo independientemente en el Art. 5, supra, mas no en el Art. 6 de la Ley Núm. 17, supra, 29 L.P.R.A. sec. 155e.
Tal como lo recogen las determinaciones de hecho del foro primario y la exposición narrativa de la prueba, no cabe duda de que la relación laboral existente entre la señora Albino y el señor Orsini era de coempleados.
Por otro lado, surge palmariamente del historial legislativo de la Ley Núm. 17, supra, que ésta tuvo su génesis en el Título VII de la Ley de Derechos Civiles de 1964 del Congreso federal y en pronunciamientos del Tribunal Supremo de Estados Unidos, así como de foros federales de inferior jerarquía, referentes a la prohibición de discriminar en el empleo por razón de sexo.(28) De ahí que para atender controversias sobre hostigamiento sexual en el empleo, la jurisprudencia del Más Alto Foro federal, así como la casuística de los tribunales federales de inferior *503 jerarquía, tienen gran valor persuasivo. Así lo demuestra la jurisprudencia de esta Curia.(29)
Conviene repasar algunos de los pronunciamientos de los tribunales federales en cuanto a la responsabilidad patronal, así como los deberes de la víctima, cuando ocurren actos de hostigamiento sexual en el lugar de trabajo. Veamos.
En 1998 el Tribunal Supremo federal resolvió dos casos relativos a la responsabilidad del patrono por actos de hostigamiento sexual en el empleo. Faragher v. Boca Raton, supra; Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998). En ambos casos, analizados según el prisma de la responsabilidad vicaria y la teoría de la agencia, el Alto Foro federal razonó que el patrono dispone de defensas afirmativas ante reclamaciones por actos de hostigamiento sexual cometidos por un supervisor contra un supervisado. El referido Tribunal distingue entre los actos cometidos por supervisores y aquellos cometidos por otros empleados para, esencialmente, analizar si, como consecuencia del hostigamiento sexual, le han sido afectados beneficios tangibles en el empleo a la víctima.(30)
En ambos casos, dicho Tribunal se expresó de la manera siguiente:
An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority *504 over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by preponderance of the evidence The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise”. (Citas omitidas y énfasis suplido.) Burlington Industries, Inc. v. Ellerth, supra, pág. 765.
En Burlington Industries, Inc. v. Ellerth, supra, el Tribunal Supremo federal indicó, además, que en la medida como la víctima notifique al patrono sobre la conducta de hostigamiento sexual se cumple con la intención legislativa del Congreso federal de promover la conciliación en lugar de la litigación. A esos fines, el referido Foro expresó lo siguiente:
For example, Title VII is designed to encourage the creation of antiharassment policies and effective grievance mechanisms. Were employer liability to depend in part on an employer’s effort to create such procedures, it would effect Congress’ intention to promote conciliation rather than litigation in Title VII. To the extent limiting employer liability could encourage employees to report harassing conduct before it becomes severe or pervasive. (Citas omitidas y énfasis suplido.) Burlington Industries, Inc. v. Ellerth, supra, pág. 764.(31)
Asimismo, el Tribunal Supremo federal se ha expresado sobre el deber que tiene la víctima de utilizar, oportunamente, los mecanismos provistos por el patrono para ponerle fin a los actos de hostigamiento sexual. A esos efectos, dicho Tribunal expresó en Faragher v. Boca Raton, supra, págs. 806-807, lo siguiente:
An employer may, for example, have provided a proven, effective mechanism for reporting sexual harassment, available to the employee without undue risk or expense. If the plaintiff *505 unreasonably failed to avail herself of the employer’s preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so. If the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, and if damages could reasonably have been mitigated no award against a liable employer should reward a plaintiff for what her own efforts could have avoided. (Enfasis suplido.)(32)
A tenor con la discusión que antecede, la víctima tiene la obligación de mantener informado al patrono sobre los actos de hostigamiento sexual sufridos para que éste pueda tomar las medidas correctivas a tiempo. Conviene destacar que en este tipo de controversias se debe considerar la razonabilidad con la que ha actuado tanto el patrono como la víctima para ponerle fin a los actos de hostigamiento sexual. En Faragher v. Boca Raton, supra, pág. 805, el Más Alto Foro federal expresó lo siguiente:
The other basic alternative to automatic liability would avoid this particular temptation to litigate, but allow an employer to show as an affirmative defense to liability that the employer had exercised reasonable care to avoid harassment and to eliminate it when it might occur, and that the complaining employee had failed to act with like reasonable care to take advantage of the employer’s safeguards and otherwise to prevent it when it might occur, and that the complaining employee had failed to act with like reasonable care to take advantage of the employer’s safeguards and otherwise to prevent harm that could have been avoided. This composite defense would, we think, implement the statute sensibly .... (Énfasis suplido.)
No compartimos la conclusión de la Mayoría a los efectos de que el patrono debe estar constantemente indagando si los actos de hostigamiento sexual entre empleados, originalmente atendidos y, a su mejor entender, resueltos, se han reanudado. Máxime cuando, como en este caso, las acciones de la señora Albino, posteriores a su querella verbal de hostigamiento, de invitar al señor Orsini a la tienda $19.95 de Corozal, al cumpleaños de su hijo, de *506 regalarle al señor Martínez unos muñequitos desnudos y de ser vista riéndose mientras hablaba por teléfono con su presunto victimario, no pusieron al patrono en posición de conocer, anticipar o prever que la relación laboral entre la señora Albino y el señor Orsini seguía siendo de víctima y hostigador.
Asimismo, la señora Albino no notificó al patrono del incidente, también posterior a su querella, ocurrido el 26 ó 27 de diciembre de 1996, en el cual el señor Orsini, luego de una reunión de gerentes, le intentó besar. La señora Albino tenía conocimiento de que inmediatamente después de querellarse, el patrono tomó medidas para que, tal como ella solicitara, el señor Orsini dejara de visitar la tienda de Corozal.
Es pertinente destacar que en todo momento el señor Orsini negó los hechos de hostigamiento sexual y que, a pesar de ello, el patrono tomó medidas para evitar que la señora Albino y el señor Orsini tuvieran cualquier tipo de contacto personal o telefónico. Como cuestión de hecho, el contacto entre ambos fue inexistente por espacio de un mes. Se reanudó cuando la propia señora Albino invitó al señor Orsini a una actividad de Acción de Gracias en la tienda $19.95 de Corozal.
Conviene repasar algunos pronunciamientos de los tribunales federales, a nivel de Distrito y Apelación, ya que éstos delinean con mayor precisión la responsabilidad del patrono por actos de hostigamiento sexual en el empleo. Dichos pronunciamientos, además, claramente distinguen la responsabilidad patronal por actos de hostigamiento sexual ocurridos entre el patrono, un supervisor o agente, de aquellos casos en que los actos de hostigamiento sexual ocurren entre empleados. Veamos.
El Tribunal de Apelaciones, Primer Circuito federal, atendiendo una controversia sobre hostigamiento sexual en el empleo, en su modalidad de ambiente hostil, distinguió entre actos de hostigamiento sexual cometidos por su *507 pervisores de aquellos que ocurren entre empleados. El referido foro se expresó de la manera siguiente:
Proving employer liability depends in the first instance upon whether the alleged harassment is caused by a co-employee of the victim or a supervisor. If the harassment is caused by a co-employee, the employer is liable if it “knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.” If the offender is a supervisor, the employer is liable unless it proves the affirmative defense “that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and ... that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. (Citas omitidas y énfasis suplido.)(33)
Hace cuatro años, el Tribunal de Apelaciones, Primer Circuito federal, tuvo la oportunidad de expresarse sobre la importancia de que la víctima notifique al patrono de los actos de hostigamiento sexual para determinar si procede imponerle responsabilidad al patrono. A esos fines, el referido tribunal expresó lo siguiente:
There is no bright-line rule as to when a failure to file a complaint becomes unreasonable, but Faragher, [supra,] and Ellerth, [supra], do provide some indirect guidance. Reporting sexually offensive conduct by a supervisor would for many or most employees be uncomfortable, scary or both. But because this will often or ordinarily be true, as the Supreme Court certainly knew, its regime necessarily requires the employee in normal circumstances to make this painful effort if the employee wants to impose vicarious liability on the employer and *508 collect damages under Title VII.(34) (Énfasis suplido y en el original.)
Asimismo, el referido foro apelativo expresó en ese caso lo siguiente:
The complaint mechanism, after all, can be used to address threats of retaliation as well as harassment, and unless patently futile, concerns as to whether the complaint mechanism will fail can be tested by trying it out if failure is the only cost. (Énfasis suplido.) Reed v. MBNA Marketing Systems, Inc., 333 F.3d 27, 36 (1er Cir. 2003).
En 2001, el Tribunal de Apelaciones, Quinto Circuito federal, atendiendo una controversia sobre hostigamiento sexual entre empleados en su modalidad de ambiente hos-til, se expresó sobre la importancia de que la víctima mantenga informado al patrono sobre los actos de hostigamiento sexual acaecidos en el taller de trabajo. Expresó que el patrono no es responsable cuando no tiene conocimiento de la conducta sexual discriminatoria o de que ésta se haya reanudado, luego de realizada una investigación que tuvo el efecto de corregir el referido ambiente hostil. A esos efectos, dicho tribunal apelativo expresó lo siguiente:
Because we view the facts in the light most favorable to Woods, we assume that Eddy continued to harass Woods after the July 7 meeting. Even so, Delta beverages cannot be held liable for conduct of which it had no knowledge. Woods had the obligation to report the alleged harassment to Delta Beverage as she had been instructed. (Énfasis suplido.)(35)
*509 Es pertinente destacar las expresiones que hiciera el Tribunal de Apelaciones, Undécimo Circuito federal, en un caso de hostigamiento sexual, en su modalidad de ambiente hostil, sobre la importancia de que la víctima del hostigamiento le comunique al patrono de los actos de hostigamiento sexual para que éste pueda tomar medidas correctivas apropiadas. El referido tribunal expresó lo siguiente:
We are not unmindful of the enormous difficulties involved in lodging complaints about discrimination in the workplace, including complaints of sexual harassment. We also recognize the great psychological burden it places on one who is already the victim of harassment to require that person to complicate further his or her life with the ramifications, both legal and otherwise, of making a complaint. Federal law has now attempted to correct the problem of workplace discrimination, but it cannot be done without the cooperation of the victims, notwithstanding that it may be difficult for them to make such efforts. When an employer has taken steps, such as promulgating a considered sexual harassment policy, to prevent sexual harassment in the workplace, an employee must provide adequate notice that the employer’s directives have been breached so that the employer has the opportunity to correct the problem. (Énfasis suplido.)(36)
Finalmente, conviene destacar que hace escasamente un mes, el Tribunal de Distrito Federal, Distrito de Alabama, resolvió un caso similar al de marras, donde una empleada demandó a su patrono alegando hostigamiento sexual en el empleo, en su modalidad de ambiente hostil, por los actos de otro empleado.(37)
*510 Éste versaba, esencialmente, sobre las medidas que tomó el patrono contra el hostigador, una vez se le informó de la conducta sexual discriminatoria. El tribunal determinó que la medida tomada por el patrono fue razonable al separar a la víctima de su presunto hostigador para así evitar el contacto entre éstos. A esos efectos, dicho foro ex-presó lo siguiente:
The record reflects that upon notification to management of the allegations, Smurfit conducted an investigation into plaintiff’s complaints, interviewed witnesses, warned Godwin of the consequences of any further incidents and placed him on a five day suspension. ... Thus, the five day suspension, and moving plaintiff to another shift to ensure that the two had no further contact, was reasonable under the circumstances. (Escolio omitido y énfasis suplido.)(38)
Concluimos que para determinar si un patrono responde por los actos de hostigamiento sexual de un empleado, es imperativo distinguir si esos actos ocurrieron entre un supervisor y un empleado o si se dieron entre coempleados. En segundo lugar, cuando se determina que los actos de hostigamiento se dieron entre empleados, el patrono será responsable si sabía o debía haber sabido de dicha conducta y dejó de tomar medidas correctivas apropiadas para detener el hostigamiento. Tercero, cuando el patrono no sabe o no tiene forma de saber que existe una conducta de hostigamiento sexual en curso entre coempleados, la víctima tiene la obligación de notificarla al patrono a fin de ponerlo en posición de tomar las medidas correctivas. En cuarto lugar, para determinar que el pa *511 trono es responsable en este tipo de controversias es imprescindible analizar la razonabilidad de sus actuaciones para detener el hostigamiento una vez adviene en su conocimiento.
Diferimos de la conclusión a la que llega la Mayoría, en el sentido de que en el caso de marras el patrono no tomó medidas inmediatas y apropiadas para detener los actos de hostigamiento sexual del señor Orsini.
Se desprende de la relación fáctica esbozada que inmediatamente después de que el patrono se enterara, por voz de la propia señora Albino, de los actos de hostigamiento sexual del señor Orsini, decidió iniciar una investigación para inquirir sobre el asunto. Celebró una segunda reunión, al día siguiente de la queja, con la señora Albino y con la señora Bernard, para recibir el insumo de éstas, en cuanto a la alegada conducta sexual del señor Orsini.(39) Como parte de la referida investigación, además, el patrono se reunió con el señor Orsini para inquirirle sobre las reclamaciones de la señora Albino. Conviene destacar que, en dicha reunión, el patrono le pidió la renuncia, a lo que, a renglón seguido, el señor Orsini negó la ocurrencia del hostigamiento sexual. No obstante, el patrono tomó las medidas para canalizar los trabajos entre sus tiendas de Vega Baja y Corozal a través de terceras personas, con el objetivo de evitar el contacto entre la señora Albino y el señor Orsini. Dicha medida fue apropiada, pues el señor Orsini dejó de visitar la tienda de Corozal durante un mes. La medida estuvo en vigor hasta que la propia señora Albino la infringió invitando al señor Orsini a una actividad en la tienda $19.95 de Corozal.
Contrario a lo que expresa la Mayoría, la medida tomada por el patrono para corregir la situación entre sus empleados no sólo fue inmediata, sino que fue apropiada y razonable, ante el cuadro fáctico que tenía ante sí. Nótese *512 que la víctima y el victimario le ofrecieron versiones distintas y controvertidas sobre los hechos. Adviértase, además, que éstos trabajaban en lugares distintos, Corozal y Vega Baja, respectivamente.
Conviene resaltar que el patrono tenía en vigor un manual de normas y de procedimientos que le concedía la potestad de tomar la acción correctiva que entendiera necesaria en aquellos casos en que un empleado suyo alegara ser víctima de hostigamiento sexual.(40) Consideramos que, en efecto, tomó la acción correctiva apropiada y necesaria.
Por otra parte, es preciso particularizar y reiterar que, sabiendo de las medidas tomadas por el patrono en una ocasión anterior, así como de su efectividad, la señora Albino no le notificó al patrono del incidente ocurrido a finales de diciembre de 1996, cuando el señor Orsini intentó besarla. Al así actuar, ésta no puso a su patrono en posición de tomar medidas correctivas adicionales, dadas las circunstancias, incluyendo, tal y como lo había pensado originalmente, despedir al señor Orsini.
Analizando la totalidad de las circunstancias de este caso, resulta forzoso concluir que el patrono no es responsable por los actos de hostigamiento sexual cometidos por el señor Orsini en la persona de la señora Albino. No se desprende del cuadro fáctico que, una vez tomadas las medidas correctivas para remediar el hostigamiento sexual, el patrono tuviera forma de saber, prever o anticipar que dicho hostigamiento se había reanudado. La conducta de la señora Albino indicaba todo lo contrario. Indicaba que el hostigamiento sexual se había erradicado.
*513 Discrepamos de la Mayoría, ya que su resultado, contrario al propio texto de la Ley Núm. 17, supra, tiene el efecto de imponer responsabilidad absoluta al patrono por actos de hostigamiento sexual en el empleo ocurridos entre empleados. Adviértase que, en este caso, el patrono tomó una medida correctiva inmediata, apropiada y razonable para terminar con el hostigamiento sexual y no tuvo forma de saber que el presunto hostigamiento se había reanudado. La conducta exhibida por parte de la señora Albino, evaluada con la totalidad de las circunstancias, nos obligan a disentir de la Mayoría.
Por otra parte, el resultado mayoritario tiene repercusiones nefastas en las relaciones obrero-patronales, puesto que implica que el patrono es responsable de fiscalizar diariamente las actividades de un empleado, que le ha traído una queja de hostigamiento sexual, para verificar que dicho hostigamiento no se ha reanudado. Estimamos que es a la víctima a quien le compete notificarle a su patrono de la ocurrencia o de la reanudación de dichos actos. Es con el beneficio de esta información que el patrono está obligado a actuar.
El resultado de la Mayoría conlleva invertir la obligación de notificar, que recae en la víctima, para que sea el patrono quien tenga la responsabilidad continua de indagar si una conducta de hostigamiento sexual entre sus empleados, que entendía remediada, se ha suscitado nuevamente.
Finalmente, la opinión de la Mayoría tiene el efecto de imponer una norma de responsabilidad casi absoluta a los patronos por actos de hostigamiento sexual entre empleados en contravención al Art. 5 de la Ley Núm. 17, supra, que permite al patrono exponer defensas afirmativas cuando, conociendo del hostigamiento, toma medidas correctivas. En este caso, estas medidas surtieron efecto hasta que la propia víctima las infringió. Dicho de otra manera, el patrono tomó las medidas correctivas que, ante las actuaciones de la propia víctima, pusieron al patrono en posición de colegir que las relaciones laborales entre ésta y el señor *514 Orsini se habían normalizado, incluso tornándose armoniosas.
III
Por los fundamentos antes expuestos, revocaríamos la Sentencia del Tribunal de Apelaciones, mediante la cual se confirmó la determinación del foro primario de que el patrono es responsable por los actos de hostigamiento sexual, en su modalidad de ambiente hostil, ocurridos entre empleados.

 Sentencia del Tribunal de Primera Instancia de 7 de agosto de 1998, Apéndice de la Petición de certiorari, págs. 34—63.

 íd., págs. 35-38. La opinión mayoritaria, pág. 463, no obstante, indica que el señor Orsini y la señora Albino se “veían en las reuniones mensuales de los gerentes de la corporación”, y luego indica que se veían semanalmente por razón de que el señor Orsini “visitaba la tienda de Corozal al menos una vez a la semana”. El que éstos se vieran una vez a la semana no encuentra apoyo en las estipulaciones de las partes ni en las determinaciones de hecho del foro primario.

 Surge del expediente que para el 25 de enero de 1996, la señora Albino y su esposo, el Sr. Pedro Martínez, en representación de su hija menor, presentaron la demanda Núm. DDP96-0080 en el Tribunal de Primera Instancia, Sala Superior de Bayamón, contra las partes siguientes: Colmado Mini-Market, Best Foods-Caribbean, Inc. (Knorr) y ABC Insurance Co. En ésta alegaron que su hija se había envenenado al consumir una sopa de fideos que tenía gusanos. Reclamaron, conjuntamente, alrededor de $190,000 por daños y perjuicios por, entre otras cosas, “las angustias emocionales y mentales” causadas por el incidente. De esta partida, la señora Albino reclamó $60,000 por sus propias “angustias emocionales y mentales”. Demanda, Apéndice de la Petición de certiorari, págs. 31-32; Exposición Narrativa de la Prueba Estipulada, Apéndice de la Petición de certiorari, pág. 344.
Conviene indicar que, en ningún momento, la opinión mayoritaria hace mención de la existencia de la referida demanda, presentada escasamente ocho meses antes de que ocurriera el primer acto de hostigamiento sexual del señor Orsini en la persona de la señora Albino. No obstante, al igual que el foro primario y el Tribunal de Apelaciones, la opinión de la mayoría hace un extenso recuento de los daños sufridos por la señora Albino.

 Sentencia del Tribunal de Primera Instancia de 7 de agosto de 1998, Apéndice de la Petición de certiorari, pág. 39.

 Demanda, Apéndice de la Petición de certiorari, pág. 39. Del expediente no surge si el segundo o tercer incidente ocurrió por la vía telefónica o en persona.

 Exposición Narrativa de la Prueba Estipulada, Apéndice de la Petición de certiorari, pág. 368.

 Sentencia del Tribunal de Primera Instancia de 7 de agosto de 1998, Apéndice de la Petición de certiorari, págs. 40-41.

 Exposición Narrativa de la Prueba Estipulada, Apéndice de la Petición de certiorari, págs. 368-369. A pesar de que la opinión mayoritaria cita extensamente la exposición narrativa de la prueba estipulada, no incluye información como ésta que, a todas luces, es imprescindible para evaluar esta controversia según la totalidad de las circunstancias.

 Exposición Narrativa de la Prueba Estipulada, Apéndice de la Petición de certiorari, pág. 368.

 Surge de las determinaciones de hecho del foro primario, concretamente la determinación Núm. 23, que contrario a lo expresado por la señora Albino, a los efectos de que la señora Bernard la acompañó al Departamento del Trabajo para también querellarse de la conducta sexual del señor Orsini, ésta acudió a dicho Departamento para quejarse de una notificación de suspensión que le cursara el señor Otero. Apéndice de la Petición de certiorari, pág. 44.

 Sentencia del Tribunal de Primera Instancia de 7 de agosto de 1998, Apéndice de la Petición de certiorari, págs. 43-45.

 íd., pág. 46.

 íd., pág. 48.

 íd., pág. 51.

 íd., pág. 49.

 íd., págs. 48-49.

 Exposición de Motivos de la Ley Núm. 17 de 22 de abril de 1988 (1988 Leyes de Puerto Rico 80).

 29 L.P.R.A. sec. 155 et seq. Conviene reseñar que esta pieza legislativa fue enmendada por la Ley Núm. 252 de 30 de noviembre de 2006, mediante la cual se le añadió al Art. 3 de la Ley Núm. 17 (29 L.P.R.A. sec. 155b), la modalidad de hostigamiento sexual por medios electrónicos, virtuales y mediante el uso de herramientas de multimedios a través de la red cibernética.

 29 L.P.R.A. sec. 155b.

 S.L.G. Afanador v. Roger Electric Co., Inc., 156 D.P.R. 651 (2002), citando a Rodríguez Meléndez v. Sup. Amigo, Inc., 126 D.P.R. 117 (1990).

 íd.

 29 L.P.R.A. sec. 155c.

 R. Ortega-Vélez, Hostigamiento Sexual en el Empleo, 2da ed. rev., San Juan, Ed. Scisco, 2005, pág. 71.

 Rodríguez Meléndez v. Sup. Amigo, supra. Véase, además, In re Robles Sanabria, 151 D.P.R. 483 (2000).

 29 L.P.R.A. sec. 155d.

 29 L.P.R.A. sec. 155e.

 Véase la expresión del Tribunal Supremo de Estados Unidos en Faragher v. Boca Raton, 524 U.S. 775, 805 (1998): “courts have consistently held that acts of supervisors have greater power to alter the environment than acts of coemployees in general.”

 42 U.S.C.A. sec. 2000 et seq. Véase la Exposición de Motivos de la Ley Núm. 17, supra, 1988 Leyes de Puerto Rico 81, donde se expresa lo siguiente: “El Congreso de Estados Unidos ha legislado para prohibir el discrimen por razón de sexo en el empleo y el Tribunal Supremo de Estados Unidos, mediante interpretación judicial.” Véase, además, las expresiones de la Dra. Ruth Ortega Vélez, referente a la similitud entre la ley federal y la ley local en materia de hostigamiento sexual en el empleo. A esos efectos, la referida tratadista expresa lo siguiente:
“La legislación estatal y la federal son similares en su contenido. Pero, la jurisprudencia emitida en los tribunales de Estados Unidos, interpretando el Título VII es mucho más numerosa y abarcadora que la proveniente del Tribunal Supremo de Puerto Rico. De ahí que, continuamente, se citen los casos resueltos por el Tribunal Supremo Federal como una guía parat la interpretación de las disposiciones antidiscrimen que rigen en Puerto Rico.” (Énfasis suplido.) Ortega Vélez, op. cit., págs. 36-37.

 Véanse, a manera de ejemplo: Rodríguez Meléndez v. Sup. Amigo, supra; In re Robles Sanabria, supra; S.L.G. Afanador v. Roger Electrico, Inc., supra; López Vicil v. ITT Intermedia, Inc., 142 D.P.R. 857 (1997), entre otros. En todos estos casos hemos citado jurisprudencia y casuística federal para resolver controversias referentes al discrimen por razón de sexo, así como por hostigamiento sexual en el empleo.

 Este término se conoce en inglés como tangible employment action. En Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998), el Tribunal Supremo federal expresó lo siguiente: “A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.” Conviene resaltar, además, que, en dicho caso, el Más Alto Foro federal expresó lo siguiente: “A tangible employment action in most cases inflicts direct economic harm. As a general proposition, only a supervisor, or other person acting with the authority of the company, can cause this sort of injury.” (Enfasis suplido.) íd., pág. 762.

 Con relación a este particular, la Dra. Ruth E. Ortega expresa lo siguiente: “Una reclamación ante el patrono, a tiempo, es una invitación para que proceda a resolver el problema rápidamente y evitar la acción ante el tribunal.” Ortega Vélez, op. cit, pág. 76.

 Faragher v. Boca Raton, supra.

 White v. New Hampshire Dept. of Corrections, 221 F.3d 254, 261 (1er Cir. 2000). Esta interpretación fue posteriormente reiterada por el Tribunal de Apelaciones, Primer Circuito federal, en Crowley v. L.L. Bean, Inc., 303 F.3d 387, 401 (1er Cir. 2002), donde el referido foro expresó lo siguiente:
“A plaintiff must satisfy different standards for establishing employer liability in a hostile work environment case depending on whether the harasser is a supervisor or co-employee of the victim. In this case, it is beyond dispute that Juhl and Crowley were co-employees. To establish employer liability for a non-supervisory co-employee, a plaintiff must demonstrate that the employer ‘knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action’.” (Énfasis suplido.)

 Reed. v. MBNA Marketing Systems, Inc., 333 F.3d 27, 35 (1er Cir. 2003), citando a Matvia v. Bald Head Island Management, Inc., 259 F.3d 261 (4to Cir. 2001). Si bien en Reed los actos de hostigamiento sexual fueron cometidos por un supervisor, ese caso es ilustrativo a la controversia de marras, ya que versa, esencialmente, sobre el deber de notificación que tiene la víctima para que el patrono tome acciones correctivas.

 Woods v. Delta Beverage Group, Inc., 274 F.3d 295, 298-299 (5to Cir. 2001). En un escolio, el foro en cuestión expresó lo siguiente: “To avoid further harm after July 7, Woods needed to reasonably take advantage of the corrective opportunities provided by her employer. Woods cannot have expected Delta Beverage to solve her problem when it had no knowledge that she continued to suffer harassment.” (Enfasis suplido.) íd., pág. 300 esc. 3. Si bien en el caso de marras, la señora Albino no fue notificada por el patrono de su deber de mantenerlo informado de la conducta del señor Orsini, surge palmariamente de la exposición narrativa de la prueba que, *509 luego de que el señor Orsini intentara besarla, ésta no informó ni al señor Otero, ni al señor Martínez sobre dicho incidente. Exposición Narrativa de la Prueba Estipulada, Apéndice de la Petición de certiorari, pág. 340. Surge, además, de las determinaciones de hecho que hiciera el foro primario que la comunicación entre la señora Albino y el señor Martínez era buena, ya que conversaban sobre asuntos laborales, así como personales. Sentencia del Tribunal de Primera Instancia de 7 de agosto de 1998, Apéndice de la Petición de certiorari, pág. 49.

 Coates v. Sundor Brands, Inc., 164 F.3d 1361, 1366 (11mo Cir. 1999). Este lenguaje se reiteró en Hansen v. Perry Technologies, 206 F. Supp.2d 1223 (S.D. Fla. 2002).

 En este caso, una mujer de treinta tres años y de raza negra presentó una demanda contra su patrono por los actos de hostigamiento sexual de otro empleado. *510 La demandante alegó, en esencia, que dicho empleado le ofreció dinero a cambio de sexo, así como en una ocasión le comentó que le gustaba tener sexo con mujeres de la raza negra. Alegó, además, que éste le manifestó que podía mantenerla siempre y cuando ella fuera buena y no tuviera relaciones sexuales con otras personas, entre otras cosas. Conviene destacar que en dicho caso el empleado demandado había trabajado para el patrono por casi cuarenta años sin que se hubieran presentado quejas de naturaleza sexual en su contra. En dicho caso el presunto hostigador, al igual que en el caso de marras, le negó al patrono la ocurrencia de la conducta sexual discriminatoria cuando le inquirió sobre el asunto.

 Burroughs v. Smurfit Stone Container Corp., LP, 506 F.2d 1002, 1016 (S.D. Ala. 2007).

 Conviene recalcar que, luego de esta reunión, el patrono determinó que la conducta desplegada por el señor Orsini conllevaba el despido y así se lo informó a la señora Albino, solicitándole su parecer al respecto.

 Dicho manual dispone, en lo que nos atañe, de la manera siguiente:
“Toda persona que haya presenciado o sea víctima de hostigamiento sexual, podrá querellarse con sus supervisores según el procedimiento establecido en este manual. La Empresa investigará las querellas y tomará aquella acción correctiva que entienda necesario. Se garantizará la confidencialidad a todas las partes envueltas.
“Toda querella de hostigamiento será investigada por la Empresa. Toda investigación se mantendrá en estricta confidencialidad, y la Empresa no divulgará información sobre la querella o los resultados de la misma a personas que no estén envueltas en esta investigación.” (Énfasis suplido.) Según citado en la Sentencia del Tribunal de Primera Instancia, pág. 28.