# 2007 DTA 111

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL III**

KAREN BATISTA MORALES
Demandante-Apelante

v.

COOPERATIVA SEGUROS DE VIDA DE P.R. (COSVI), JULIA SANTOS, WILLIAM REXACH, JULIO GARCÍA, SU ESPOSA FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR ELLOS
Demandados-Apelados

Núm. KLAN-2006-00513

San Juan, Puerto Rico, a 18 de septiembre de 2007

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
y las Juezas Fraticelli Torres y García García

Fraticelli Torres, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

En el presente caso debemos resolver si el Tribunal de Primera Instancia, Sala Superior de San Juan, erró al desestimar una demanda por hostigamiento sexual y despido injustificado incoada por la apelante, señora Karen Batista Morales, en contra de la Cooperativa de Seguros de Vida de Puerto Rico (COSVI) y de otros empleados.

Por los fundamentos expuestos a continuación, resolvemos que el Tribunal de Primera Instancia no incidió al desestimar la demanda. Procede la confirmación de la sentencia apelada.

### I

A base de las determinaciones de hechos de la sentencia, las que encuentran apoyo en la evidencia que obra en el expediente, ■ destacamos los hechos esenciales del caso de autos.

En 1994, la señora Karen Batista Morales comenzó a trabajar en COSVI, compañía autorizada a vender seguros en Puerto Rico. Ya para 1999, la señora Batista se desempeñaba como Auxiliar de Contabilidad en el Centro de Seguro Individual de COSVI, con un salario de $6.18 por hora, equivalente a $1,071.20 mensual. A finales de julio de 1999, otro empleado de COSVI, el señor William Rexach, se quejó ante la supervisora de ambos, la señora Julia Santos, de que se sentía hostigado por la señora Batista. Pocos días después, la señora Batista acudió a la señora Santos para quejarse de que era víctima de hostigamiento sexual por parte de otro de los empleados de COSVI, el señor Julio García, su compañero de cubículo. La señora Santos refirió ambas querellas a la Oficina de Recursos Humanos de la compañía y reubicó al señor García en otro lugar de trabajo.

El 11 de agosto de 1999, el señor Rexach presentó su querella por escrito y en ella adujo que hacía aproximadamente dos meses que la señora Batista le hacía insinuaciones de tipo sexual que no eran de su agrado. Específicamente, indicó que ella lo rozaba al levantarse de su silla y tenía contacto directo con su cuerpo, hasta tocarle su órgano sexual; que se le insinuaba visualmente al desabrocharse la blusa; que le decía que soñaba con él todas las noches y que deseaba que llegara el lunes para verlo; que también le decía que estaba enamorada de él y en ocasiones se tornaba obsesiva con él; que lo acosaba por teléfono desde su extensión al hablarle en lenguaje erótico y que en ocasiones lo besó. Incluso, en una ocasión, luego de almorzar, la señora Batista insistió en que la besara y que luego *"quería más"*, a lo que él se negó. Por esto formó un altercado frente a la fuente de agua de su lugar de trabajo, le dijo que él no sabía lo que ella era capaz de hacer, lo amenazó con seguirlo y le advirtió que no estaría tranquila hasta que se acostara con ella.

La señora Evelyn Burgos, Directora de Recursos Humanos de COSVI, recibió las dos querellas y activó el Comité de Personal de la empresa que atiende los asuntos de hostigamiento sexual. El Comité entrevistó a la señora Batista, al señor Rexach y al señor García, así como a las empleadas Joan Cruz, Amalia Cruz y Omayra Vargas. En la entrevista que sostuvo con la señora Batista, el Comité le explicó las alegaciones del señor Rexach en su contra y le pidió que diera su versión de lo ocurrido; también le solicitó que explicara sus alegaciones de igual naturaleza en contra del señor García.

La señora Batista negó las alegaciones sobre hostigamiento sexual del señor Rexach y algunos de los incidentes relatados por él. Admitió que incurrió en parte de la conducta imputada por él, pero en el contexto de una relación de compañeros de trabajo en la que el señor Rexach hacía chistes y comentarios y observaba

conducta de contenido sexual mientras estaba con ella y otros empleados.

El Comité también entrevistó a la señora Omayra Vargas, compañera de cubículo del señor Rexach. Ésta indicó que la señora Batista frecuentaba mucho el escritorio del señor Rexach y que cuando lo hacía, le pedía a ella que se virara para el otro lado. También declaró que en una ocasión, cuando la señora Batista se fue del escritorio del señor Rexach, vio que éste tenía "*lipstick*" en la cara; que el señor Rexach le pedía a la testigo que cuando viniese la señora Batista no se fuera; que la señora Batista le pasaba la mano por el pelo al señor Rexach mientras éste estaba en su escritorio; que también lo llamaba por teléfono y ella lo sabía porque cogía el teléfono; y que el señor Rexach le llegó a comentar que la señora Batista lo tenía "*aborrecío*" y que le hizo amenazas.

Por su parte, la señora Amalia Cruz declaró ante el Comité que ella notaba que la señora Batista iba mucho al escritorio del señor Rexach. De igual forma, la señora Joan Cruz declaró que el día en que hubo un intercambio fuerte entre el señor Rexach y la señora Batista frente a la fuente de agua, el señor Rexach la llamó nervioso y llorando y le dijo que la señora Batista lo hostigaba y que lo había amenazado. Se le preguntó a estas compañeras de trabajo si el señor Rexach hacía chistes con contenido sexual o si exhibía conducta de este tipo y ellas lo negaron.

En cuanto a la querella presentada por la señora Batista en contra del señor García, ésta relató al Comité que, luego de haber regresado de su licencia de maternidad, como a mediados de marzo, el señor García le pasó un "*papelito*" con una especie de poesía en que no le faltaba el respeto como tal, pero que ella entendía que era como si ella le gustara a él; que a los pocos días, el señor García le preguntó si nunca había tenido una fantasía sexual y que ese día ella le comunicó lo sucedido a su supervisora. La señora Batista también indicó que luego de lo anterior, el señor García le tiró piropos dos o tres veces, tales como "*estás bien linda hoy*", pero que ella calificó como "*cosas sencillas*". La señora Batista declaró, además, que en julio de 1999, el señor García la invitó a almorzar en dos ocasiones. Una de las invitaciones la hizo a través de una nota que decía "*vámonos a almorzar, si es afirmativo, tírame una guiñá (sic) y si no, devuélveme la notita*". La señora Batista acudió donde su supervisora, la señora Santos, a contarle el incidente, lo que provocó que cambiaran al señor García de lugar de trabajo. Luego de la reubicación del señor García, no hubo incidentes ni acercamientos ulteriores indebidos.

El señor García declaró ante el Comité y admitió que escribió la nota/poesía ▮ a la que se refería la señora Batista cuando ésta regresó de maternidad, para alentarla ante la situación por la que ésta atravesaba. ▮ Éste admitió que le hizo comentarios a la señora Batista sobre su apariencia personal, pero en respuesta a las preguntas que ella misma le hacía. También declaró que la invitó a almorzar en una ocasión para superar los choques que tuvo con ella por diferencias de trabajo respecto a los cuales la supervisora tuvo que intervenir.

El 16 de agosto de 1999, el Lic. William Rodríguez Suárez, en representación de la señora Batista, le cursó una comunicación al señor Gabriel Dolagaray, Presidente de COSVI, en la cual le señalaba que luego que la señora Batista le notificó a su supervisora que era objeto de hostigamiento sexual por parte de un compañero de oficina fue que se presentó contra ella una querella por una situación similar. En la misma carta cuestionó el proceder de la Comisión de llamar sin previo aviso a la señora Batista para entrevistarla y de grabar la entrevista. También objetó la naturaleza de las preguntas que se le hicieron a ella en esa ocasión y le expresó que en esos momentos la señora Batista era objeto de burla por sus compañeros de trabajo, por lo que se sentía vejada, maltratada, discriminada, hostigada sexualmente e intimidada por sus compañeros, supervisores y otros funcionarios de la empresa.

Como producto de la investigación, el Comité de Personal rindió un informe con sus recomendaciones sobre las medidas disciplinarias que debían tomarse respecto a la señora Batista y el señor García. COSVI acogió las recomendaciones del Comité y despidió a la señora Batista de su empleo, mediante carta de 19 de agosto de 1999 suscrita por el señor Carlos Fernández, Vicepresidente Ejecutivo, que le fue notificada el 31 de

agosto de 1999. Ese mismo funcionario le envió una carta de amonestación al señor García, mediante la cual le informaba que había violado la Política de Hostigamiento Sexual de COSVI y que sería despedido inmediatamente en caso de ocurrir otra situación semejante. La diferencia en las recomendaciones del Comité en cuanto a las medidas disciplinarias a imponerse se debió, según el testimonio de la señora Evelyn Burgos, a la naturaleza y seriedad de la conducta que se le imputó a la demandante, la cual incluia contacto físico no deseado en las partes íntimas y hasta amenazas. Según ésta, esa conducta afectaba el normal y buen funcionamiento de la empresa y hubiese sido una imprudencia esperar a que ese tipo de conducta se repitiera para tomar acción.

## II

Inconforme con el despido, la señora Batista incoó una reclamación en daños por hostigamiento sexual y por despido injustificado contra COSVI, en la que incluyó también como codemandados a la señora Julia Santos, al señor William Rexach, al señor Julio García, a su esposa, Fulana de Tal, a la sociedad de bienes gananciales compuesta por ellos, y a John Doe y Richard Roe, como demandados desconocidos. Los demandados contestaron la demanda y negaron los hechos.

El Tribunal de Primera Instancia celebró el juicio y tuvo ante sí prueba testifical, documental y pericial. La prueba testifical de la demandante consistió de su testimonio y la prueba pericial consistió del testimonio del Dr. Alfonso A. Madrid, siquiatra. ▉

Por su parte, la prueba testifical de la parte demandada incluyó los testimonios de las siguientes personas: la señora Julia Santos, supervisora, la señora Evelyn Burgos, Directora de Recursos Humanos de COSVI, el señor William Rexach, el señor Julio García, las empleadas Omayra Vargas, Amalia Cruz y Joan Cruz y el señor Luis Francisco Toledo. La prueba pericial consistió del testimonio del Dr. Víctor Lladó y del informe rendido por éste, que rebatía las conclusiones del informe pericial del Dr. Madrid. La parte demandada también sometió abundante prueba documental consistente, entre ella, el Reglamento de Personal de COSVI, su Política sobre el Hostigamiento Sexual y la transcripción de los testimonios prestados por algunos de los empleados ante el Comité de Personal.

Luego de aquilatar la prueba, el Tribunal de Primera Instancia emitió la sentencia mediante la cual desestimó las dos causas de acción contenidas en la demanda de la señora Batista. El Tribunal de Primera Instancia destacó que COSVI recibió la querella del señor Rexach que, de su faz, imputaba conducta violatoria, no sólo de la política escrita sobre hostigamiento sexual de la empresa, sino también de la ley que proscribe el hostigamiento sexual en el empleo, Ley 17 de 22 de abril de 1988, 29 L.P.R.A. sec. 155 *et seq.*; que COSVI procedió a investigar el asunto y durante el proceso le dio a la demandante la oportunidad de exponer su versión de los hechos; que el patrono también entrevistó a todas las personas que podían tener conocimiento de los hechos y confirmó varias de las imputaciones de carácter serio que se hacían en contra de la demandante; y que luego de realizado todo el proceso fue que COSVI despidió a la señora Batista.

El Tribunal de Primera Instancia también concluyó que la conducta de la demandante hacia el señor Rexach fue de tal magnitud que, en efecto, afectó el normal funcionamiento de COSVI y fue lesiva a la paz del lugar de empleo, por lo que se justificaba el despido de la señora Batista. A esos efectos, basó su dictamen en lo resuelto en *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 D.P.R. 643 (1994).

Inconforme con la sentencia, la señora Batista apeló ante nos y plantea que el Tribunal de Primera Instancia cometió los siguientes cuatro errores: (1) al determinar que hubo justa causa para el despido; (2) al no aplicar la presunción de discrimen que dispone la Ley 100 de 30 de junio de 1959, 29 L.P.R.A. sec. 1321 *et seq.*; (3) al concluir que el codemandado Julio García no hostigó sexualmente a la apelante; y (4) al determinar que COSVI no respondía, a pesar de permitir un ambiente de trabajo hostil.

## III

En su primer señalamiento de error, la apelante no refuta que su actuación hacia el señor Rexach fue la que provocó la acción disciplinaria del patrono. Lo que plantea es que no procedía su despido, en virtud de lo dispuesto en el Reglamento de Personal de COSVI, que clasificaba el hostigamiento sexual como una falta del Grupo III de Violaciones y Amonestaciones y acarreaba una amonestación escrita con copia al expediente de personal del empleado, en caso de una primera violación, y el despido en caso de una segunda violación. Por tal razón, la apelante arguye que COSVI estaba obligada a cumplir con lo dispuesto en el Reglamento de Personal, cuya aplicación no podía ser arbitraria ni caprichosa. Reclama, además, que el lenguaje reglamentario debió interpretarse liberalmente a favor de la empleada por ser un contrato de adhesión.

La apelante argumenta que el Reglamento de Personal de COSVI cataloga las faltas de agresión o contacto físico extremo (falta 12) y de amenaza (falta 13) en el Grupo II de Violaciones y Amonestaciones, cuyas sanciones son inferiores a la asignada al hostigamiento sexual. Por ello, sostiene que no procedía su despido, ya que el patrono debió aplicar las sanciones disciplinarias establecidas en el Reglamento de Personal para las faltas de agresión física y amenaza antes de la cesantía de empleo.

De igual forma, la apelante cuestiona la aplicación de distintas medidas disciplinarias a los dos empleados involucrados, ya que a ella la despidieron y al señor Julio García se le envió una carta de amonestación. La apelante señala que la razón aducida por la Directora de Personal de COSVI para esta diferencia en la imposición de las aludidas medidas disciplinarias fue que en la querella contra ella se demostró que hubo contacto físico y amenazas contra un compañero, cosa que no ocurrió en la conducta exhibida por el señor García contra ella.

Si examinamos el Reglamento de Personal de COSVI, surge que en el Capítulo XI sobre Normas de Comportamiento y Personalidad se incluyó el inciso E sobre Hostigamiento Sexual, que establece lo siguiente:

*"Ningún empleado podrá poner en práctica tácticas de hostigamiento sexual, de acuerdo a la reglamentación promulgada por los organismos de Ley."*

Apéndice de la apelante, a la pág. 158.

De igual forma, el Capítulo XII del Reglamento de Personal de COSVI establece las medidas disciplinarias que acarrean las distintas violaciones de personal. En el Grupo II de Violaciones y Amonestaciones surge como violaciones: el uso de lenguaje amenazante, agredir, intimidar, amenazar y coaccionar. Las medidas disciplinarias para estas violaciones consisten en una entrevista con el supervisor y director de personal con una copia por escrito al expediente de personal, en el caso de una primera violación, una amonestación escrita con copia al expediente de personal, en el caso de una segunda violación, y el despido, en el caso de una tercera violación. ■

Originalmente, el hostigamiento sexual se incluyó en el Grupo II de Violaciones y Amonestaciones. No obstante, el Reglamento de Personal se enmendó el 28 de marzo de 1988 ■ para incluir el hostigamiento sexual como una violación en el Grupo III de Violaciones y Amonestaciones, que establece como medida disciplinaria una amonestación, en caso de una primera violación, y el despido, en caso de una segunda violación. ■ Se advierte, sin embargo, en este apartado que *"una violación a cualquiera de estas violaciones (sic) del Grupo Tres (III), la empresa tendrá la facultad de despedir al empleado justificadamente."* El reglamento no define lo que es justificadamente, por lo que debemos evaluar tal término en armonía con la legislación laboral aplicable. Consideremos primeramente el concepto de justa causa para el despido, según regulado por la Ley 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185a *et seq.*

El Artículo 2 de la Ley 80 dispone que *"[s]e entenderá por justa causa para el despido de un empleado de*

*un establecimiento: (a) que el obrero siga un patrón de conducta impropia o desordenada."* [...] Añade que *"[n]o se considerará despido por justa causa aquél que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento".* 29 L.P.R.A. sec. 185b.

No olvidemos que uno de los propósitos esenciales de la Ley 80 es dar mayor protección a los trabajadores ante el despido injustificado, no sólo al establecer una indemnización progresiva que les permita enfrentar temporalmente su situación laboral y económica inesperada, luego del paro laboral, sino al hacer más restrictivo el concepto de justa causa para el despido. *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536, 540-541 (1979).

El peso de la prueba para establecer que el despido estuvo justificado lo tiene el patrono. El Artículo 8 de la Ley 80 reseña sobre este particular que:

*"(a) En toda acción entablada por un empleado reclamando los beneficios dispuestos por las secs. 185a et seq. de este título, el patrono vendrá obligado a alegar, en su contestación a la demanda, los hechos que dieron origen al despido y probar que el mismo estuvo justificado para quedar eximido de cumplir con lo establecido en la sec. 185a de este título...".*

29 L.P.R.A. sec.185k.

Es decir, la justa causa será la única defensa afirmativa que relevará al patrono de responder por la mesada que fija la ley. Esto es así porque la ley presume que el despido de un empleado es injustificado hasta que el patrono demuestre que tuvo justa causa para prescindir de sus servicios. *Srio del Trabajo v. I.T.T.*, 108 D.P.R., a la pág. 546. Esto implica procesalmente que, aunque, de ordinario, es al *"reclamante al que le corresponde la obligación de probar con preponderancia de la prueba sus alegaciones para poder prevalecer en el pleito, [tal principio procesal] encuentra una excepción en los casos de la Ley 80".* *Díaz v. Wyndham*, 155 D.P.R. 364, 378-379 (2001). Corresponde al patrono alegar afirmativamente la causa del despido. Derrotada la presunción, aún debe prevalecer luego en el juicio por preponderancia de la prueba sobre la causa autorizada por la ley o expresada en los reglamentos de la empresa.

Es decir, en lo atinente al caso de autos, al interpretar el concepto de justa causa de la Ley 80, el Tribunal Supremo ha señalado que la falta o acto aislado que de lugar al despido del empleado en primera ofensa tiene que ser de tal seriedad o naturaleza que revele una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa, que constituiría imprudencia esperar su reiteración para separarlo del establecimiento. *Srio. del Trabajo v. I.T.T.*, 108 D.P.R., a la pág. 544.

El Tribunal Supremo ha señalado, sin embargo, que la Ley 80 no es un código de conducta que fija una lista de faltas definidas o taxativas. El patrono podría adoptar las normas que entienda razonables y necesarias para que la empresa funcione correctamente. *Id.*, a la pág. 542; *Jusino v. Walgreens,* 155 D.P.R. 560, 573 (2001).

En el caso de autos, la conducta desplegada por la apelante implicaba varias violaciones a la conducta prohibida por el patrono en su Reglamento de Personal, ya que no sólo constituia violaciones por agresión física y por amenaza, violaciones incluidas en el Grupo II de Violaciones y Amonestaciones, sino también una conducta reiterada de hostigamiento sexual hacia el señor Rexach, violación incluida en el Grupo III de Violaciones y Amonestaciones. El Tribunal de Primera Instancia tenía que evaluar si, ante el conjunto de violaciones del Reglamento de Personal, el patrono actuó razonablemente al despedir a la apelante, como medida inmediata y apropiada autorizada por la Ley 17.

Luego de aquilatar la prueba presentada en el juicio, el foro sentenciador determinó que había diferencia entre la conducta de hostigamiento sexual desplegada por la apelante hacia el señor William Rexach y los actos de hostigamiento del señor Julio García hacia la apelante. Esa prueba demostró que la apelante acosaba

sexualmente al señor Rexach durante horas laborables en su área de trabajo, mediante llamadas telefónicas, mediante contacto directo y finalmente, mediante amenazas. Tal prueba fue creída por el Tribunal de Primera Instancia y no tenemos motivo para descartarla.

Como conclusión de derecho, el Tribunal de Primera Instancia determinó que la conducta de hostigamiento sexual hacia el señor Rexach no sólo fue frecuente, intensa y duradera, sino que también fue lo suficientemente severa y ofensiva como para alterar las condiciones de empleo de la empresa y crear un ambiente de trabajo hostil que, a juzgar por lo que hemos evaluado en la etapa apelativa, era un ambiente de trabajo un tanto disoluto y licencioso. El hecho de que por semanas el señor Rexach aceptó sus acercamientos afectivos y físicos no le quita mérito a la querella, pues quedó probado en el juicio que la apelante no cejó en su conducta agresiva cuando aquél le pidió que desistiera, hasta hacer que se sintiera amenazado en su integridad física, prueba que la apelante no rebatió en el juicio.

Ante tal comportamiento, admitido por la apelante, la acción del patrono de despedirla no fue una medida arbitraria ni caprichosa, sino la medida inmediata y apropiada que consideró prudente para resolver la situación del ambiente hostil y libertino que imperaba en sus oficinas en horas laborables y que descubrió a raíz de la querella del señor Rexach.

En cuanto a la conducta desplegada por el señor Julio García hacia la apelante, el foro sentenciador concluyó que ésta no fue lo suficientemente severa y duradera para ameritar el despido de ese empleado. En primer lugar, porque a pesar de que concluyó que el señor García efectivamente le profería piropos, la invitaba a almorzar y le pasaba papelitos con mensajes que ella consideraba *"cosas sencillas"*, la apelante se dio por satisfecha cuando lo cambiaron de estación de trabajo, luego de lo cual no hubo *"ulteriores incidentes de acercamientos indebidos"*. En segundo lugar, porque, tan pronto el patrono confrontó al señor García sobre la queja de hostigamiento sexual de la apelante, lo trasladó de lugar de trabajo y le envió una carta de amonestación con la advertencia de que lo despediría inmediatamente en caso de una situación similar, él no volvió a exhibir ese tipo de conducta con la apelante, según ella lo admitió en su testimonio. La acción tomada por la empresa en el caso del señor García constituyó una medida oportuna y apropiada.

En virtud de lo expuesto, resolvemos que el foro apelado no incurrió en el primer error señalado por la parte apelante.

En su segundo señalamiento de error, la apelante plantea que el Tribunal de Primera Instancia determinó que existía causa justa para el despido, por lo que no dispuso nada sobre el efecto de la presunción de discrimen que impone la Ley 100, que opera cuando el demandante prueba tres elementos: (1) que hubo un despido o acción perjudicial; (2) que ese despido fue sin justa causa; y (3) que existe alguna evidencia indicativa de la alegación de discrimen que se vincula al despido, a tenor de lo pautado en *S.L.G. Hernández-Beltrán v. TOLIC*, 151 D.P.R. 754 (2000). Este señalamiento carece de méritos en el caso de autos, tanto al amparo de la Ley 80 de 30 de mayo de 1976 como de la Ley 100 de 30 de junio de 1959, 29 L.P.R.A. sec. 1321 *et seq.*

Sabido es que los casos de despido que regula la Ley 100, por la política pública que ésta implanta, reciben un tratamiento un poco distinto al que ofrece la Ley 80 para el caso de despido ordinario. Esa pequeña distinción es la que justifica el señalamiento de la parte apelante. Atendamos esa alegada especialidad de la cuestión. *Díaz v. Wyndham*, 155 D.P.R., a las págs. 387-388.

El Artículo 3 de la Ley 100, 29 L.P.R.A. sec. 148, establece una presunción controvertible de despido discriminatorio. A esos efectos, se considera que los actos discriminatorios por razón de edad, raza, color, religión, sexo, origen social o nacional o condición social se cometieron en violación de la ley, salvo que el patrono demuestre que hubo justa causa. *S.L.G. Hernández-Beltrán v. TOLIC*, 151 D.P.R., a la pág. 774.

No obstante, *"esa presunción entra en juego en la etapa probatoria del caso, es decir, que la presunción se activa en la vista evidenciaria que se celebre, no antes"*. *S.L.G. Hernández-Beltrán v. TOLIC*, 151 D.P.R., a la pág. 774. De ahí que esa presunción no altera el esquema probatorio que prevalece en nuestra jurisdicción, en que le corresponde a la parte demandante presentar, en primer lugar, la prueba de su reclamación, antes de que la parte demandada venga obligada a rebatirla. *Id.*

La parte demandante debe, pues, presentar prueba que demuestre: (1) que hubo un despido o acto perjudicial; (2) que ese acto se realizó sin justa causa; y (3) algún hecho base que ubique ese acto dentro de la modalidad de discrimen bajo el cual reclama. Una vez que la parte demandante cumple con esa primera fase es que surge la presunción de discrimen y el peso de la prueba cambia y recae en el patrono. En caso de que el patrono no presente prueba alguna, el empleado prevalecería en su reclamación. Por el contrario, si el patrono decide defenderse, éste puede presentar prueba que rebata la presunción de discrimen activada por el empleado o puede optar por presentar prueba de que el despido fue justificado, que no hubo tal despido o que, en caso de haber habido un despido, que el despido no fue discriminatorio. *S.L.G. Hernández-Beltrán v. TOLIC*, 151 D.P.R., a la pág. 775.

En el caso de autos, luego de aquilatar la prueba, el Tribunal de Primera Instancia determinó que hubo justa causa para el despido, razón por la cual no aplicaba la presunción a favor de la apelante. De igual forma, en este caso, la prueba demostró que las conductas de la apelante y del señor García fueron distintas en cuanto a la severidad, frecuencia y gravedad de los actos imputados a ambos por separado, por lo que la aplicación de medidas disciplinarias distintas no constituyó un acto de discrimen. Aunque la conducta hostigadora, por menor que sea, debe erradicarse absolutamente del ambiente de trabajo, la realidad es que la querella que inició el proceso disciplinario contra la apelante, cuyos hechos el foro sentenciador determinó probados, reflejan, sin duda, *"una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa, que constituiría imprudencia esperar su reiteración para separarl[a] del establecimiento"*. Resolvemos, por ello, que este segundo error tampoco se cometió.

En su tercer señalamiento de error, la apelante se queja de que el Tribunal de Primera Instancia no concluyó que el codemandado Julio García la hostigó sexualmente y en su cuarto señalamiento alega que ese foro incidió al concluir que COSVI no le responde civilmente por permitir un ambiente de trabajo hostil. A esos efectos, señala que el tribunal *a quo* debió considerar la totalidad de las circunstancias que colocaron a la apelante en un ambiente de displicencia y relajamiento laboral.

La apelante aduce, además, que las conclusiones del Tribunal de Primera Instancia no están sostenidas por la evidencia, ya que la apelante testificó que se sintió ofendida con las actuaciones del señor García, las cuales no eran bienvenidas. Según la parte apelante, el codemandado García aceptó que la apelante se molestaba cuando él le hacía requerimientos y le enviaba notitas.

Asimismo, la apelante arguye que las expresiones del señor García de decirle lo bonita que estaba, lo bonito que le quedaba el pelo y hacerle los comentarios inapropiados constituia un patrón de conducta que contenía suficientes elementos para crear un ambiente hostil e intimidante en el trabajo de la apelante. La apelante también señala que es inconsistente que COSVI hubiese determinado que el codemandado García violó su política de hostigamiento sexual, mientras que el Tribunal de Primera Instancia determinó que no la violó.

La Ley 17, *supra*, establece la normativa a seguir sobre el hostigamiento sexual en el empleo. El Artículo 3 de la citada ley, 29 L.P.R.A. sec. 155b, define el hostigamiento sexual en el empleo como *"cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual, cuando se da una o más de las siguientes circunstancias:*

*(a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o*

*condición del empleo de una persona.*

*(b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.*

*(c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo."*

Énfasis nuestro. 29 L.P.R.A. sec. 155b.

De este artículo surge que el hostigamiento sexual en el empleo puede darse en dos modalidades. La primera —contenida en los incisos (a) y (b)—, se refiere a la modalidad de hostigamiento equivalente o *quid pro quo*. La segunda modalidad —contenida en el inciso (c)—, corresponde a la modalidad de hostigamiento sexual por ambiente hostil. *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 D.P.R., a la pág. 653. Ahora bien, para determinar si la alegada conducta constituye hostigamiento sexual en el empleo, en cualquiera de sus dos modalidades, se ha de considerar la totalidad de las circunstancias en que ocurrieron los alegados hechos hostigantes. Artículo 4 de la Ley 17, 29 L.P.R.A. sec. 155c.

Recientemente, en *Albino v. Martínez*, res. el 4 de junio de 2007, 171 D.P.R. ___, (2007), **2007 J.T.S. 117**, a la pág. 1615, el Tribunal Supremo tuvo la oportunidad de reinterpretar el alcance de esta disposición legal. Sobre la segunda modalidad, por ambiente hostil, que es la que nos atañe en el caso de autos, reiteró:

*"[...] La conducta constitutiva de hostigamiento debe ser lo suficientemente severa y ofensiva como para alterar las condiciones del empleo y crear un ambiente de trabajo abusivo. Este examen debe realizarse tomando en consideración factores como la naturaleza de la conducta alegada, su frecuencia e intensidad, el contexto en el que ocurre, la duración de la misma y la conducta y circunstancias personales de la alegada víctima."* [Citas omitidas.]

Énfasis nuestro. *Albino v. Martínez*, **2007 J.T.S. 117**, a la pág. 1617. Así lo había pautado en *Rodríguez Meléndez v. Sup. Amigo, Inc.*, 126 D.P.R. 117, 131-132 (1990); *In re: Robles Sanabria*, 151 D.P.R. 483, 500-501 (2000), y *S.L.G. Afanador v. Roger Electric Co., Inc.*, 156 D.P.R. 651, 663 (2002).

Luego de aplicar tales factores, si se determina que una conducta constituye hostigamiento sexual en el empleo, ya sea por la modalidad de *quid pro quo* o de ambiente hostil, la Ley 17 impone responsabilidad al patrono. El Artículo 5 dispone que *"un patrono será responsable de incurrir en hostigamiento sexual en el empleo por sus actuaciones y las actuaciones de sus agentes o supervisores, independientemente de si los actos específicos objeto de controversia fueron autorizados o prohibidos por el patrono e independientemente de si el patrono sabía o debía estar enterado de esa conducta".* 29 L.P.R.A. sec.155d.

Sin embargo, la ley advierte que tal responsabilidad recae sobre el patrono si éste o sus agentes o supervisores **sabían o debían estar enterados de esa conducta** y no tomaron **una acción inmediata y apropiada** para corregir la situación. Artículo 6 de la Ley 17, 29 L.P.R.A. sec. 155e. ▉ Igual norma aplica cuando la conducta denunciada se da por personas ajenas al lugar de empleo sobre los empleados. Artículo 7 de la Ley 17, 29 L.P.R.A. sec. 155f; *Albino v. Martínez*, **2007 J.T.S. 117**, a la pág. 1617.

En cuanto a lo que constituye una acción inmediata y apropiada, el Tribunal Supremo ha señalado que es *"aquélla que razonablemente terminará sin demora los actos de hostigamiento sexual y evitará la repetición de éstos de manera efectiva".* *Albino v. Martínez*, **2007 J.T.S. 117**, a la pág. 1617. Ahora bien, para determinar si un patrono tomó una acción inmediata o apropiada es necesario examinar las circunstancias particulares de cada caso, entre éstas, la existencia de un reglamento aplicable a la situación y el cumplimiento por el patrono con lo

allí dispuesto. *Íd.*

A su vez, el Artículo 10 de la Ley 17, 29 L.P.R.A. sec. 155i, establece el deber del patrono de mantener el centro de trabajo libre de hostigamiento sexual e intimidación. Como parte de esos deberes, el patrono deberá exponer claramente su política contra el hostigamiento sexual ante sus supervisores y empleados y garantizar que éstos puedan trabajar con seguridad y dignidad. De igual forma, se le requiere al patrono prevenir, desalentar y evitar el hostigamiento sexual en el empleo, para lo que deberá tomar las medidas necesarias o convenientes para ese propósito. Específicamente, el Artículo 10 pauta las siguientes medidas correctivas:

*"(a) Expresar claramente a sus supervisores y empleados que el patrono tiene una política enérgica contra el hostigamiento sexual en el empleo.*

*(b) Poner en práctica los métodos necesarios para crear conciencia y dar a conocer la prohibición del hostigamiento sexual en el empleo.*

*(c) Dar suficiente publicidad en el lugar de trabajo, para los aspirantes a empleo, de los derechos y protección que se les confieren y otorgan bajo las secs. 155 a 155l de este título, al amparo de las secs. 1821 a 1341 de este título, las secs. 146 a 151 de este título y de la Constitución del Estado Libre Asociado de Puerto Rico.*

*(d) Establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual."*

29 L.P.R.A. sec.155i.

Al evaluar si la acción tomada fue oportuna y apropiada, el foro sentenciador examinará si el patrono demandado dio cumplimiento continuo y efectivo a tales medidas. *Albino v. Martínez,* **2007 J.T.S. 117**, a la pág. 1618.

Por tal razón, le corresponde a la parte perjudicada probar, no sólo el alcance crítico del hostigamiento, sino también que su patrono sabía de la conducta alegada, al demostrar que le notificó la situación a éste o a su agente o supervisor o que la situación era tan grave que éstos debían conocerla. *Albino v. Martínez,* **2007 J.T.S. 117**, a la pág. 1617, que cita con aprobación a *Rodríguez Meléndez v. Sup. Amigo, Inc.,* 126 D.P.R., a las págs. 128-129.

Procesalmente, luego que el empleado demuestra que el patrono o sus agentes conocían o debieron haber percibido los actos de hostigamiento, entonces le corresponde al patrono probar que actuó de manera inmediata y apropiada para corregir la situación. De ahí que *"en el momento en que un empleado le notifica a su patrono, agente o supervisor, que ha sido hostigado por un compañero de trabajo, se activa la responsabilidad afirmativa del patrono de tomar acción correctiva".* *Albino v. Martínez,* **2007 J.T.S. 117**, a la pág. 1617.

Es decir, que a pesar de que la Ley 17 no requiere el despido como la acción apropiada e inmediata en estos casos, ello no impide que el patrono pueda despedir al empleado si el reglamento del patrono establece el despido como sanción disciplinaria para una primera violación de un empleado a la política sobre hostigamiento sexual. Véase lo resuelto en *Delgado Zayas v. Hosp. Int. Med. Avanzada,* 137 D.P.R., a la pág. 657. En este caso, el reglamento del patrono claramente exponía que la primera violación de un empleado a su política contra el hostigamiento sexual acarrearía el despedido. Por tal razón, el Tribunal Supremo resolvió que en esas circunstancias el patrono actuó de forma inmediata y apropiada al despedir a un empleado que conocía del reglamento y cometió actos de hostigamiento sexual de tal seriedad que puso en peligro el orden de la empresa. *Íd.,* a las págs. 657-658. Véase, además, *Rivera v. Pan Pepín, Inc.,* res. el 21 de abril de 2004, 161 D.P.R. \_\_\_\_

(2004), **2004 J.T.S. 68**, a la pág. 942, en el que el Tribunal Supremo expresó que, aunque la Ley 80 no favorece el despido como sanción a la primera falta, ello podría considerarse justificado si dicha acción u omisión, por su gravedad y potencial de agravio, pone en riesgo la seguridad, el orden o la eficiencia que constituyen el funcionamiento del negocio y, por tanto, constituiría una imprudencia esperar su reiteración para despedirlo. *Íd.*, a la pág. 948.

En el caso de autos, el Tribunal de Primera Instancia desestimó la causa de acción por hostigamiento en contra del señor García, basándose en que la demandante le informó a COSVI que la nota/poesía no le faltaba el respeto y en que la demandante calificó los piropos como cosas sencillas. En cuanto a las dos invitaciones a almorzar y a la interrogante de *"¿tú nunca has tenido una fantasía sexual?"*, el tribunal *a quo* señaló que esa conducta no tuvo la frecuencia e intensidad necesarias ni fue lo suficientemente severa y ofensiva para alterar las condiciones de empleo y crear un ambiente de trabajo abusivo. De igual forma, el Tribunal de Primera Instancia no sostuvo la alegación de la apelante debido a que no creyó gran parte de su testimonio. A ese foro le pareció inverosímil que ella fuera a quejarse a su supervisora sobre la conducta del codemandado García de tres a cuatro veces por semana, ya que ello equivaldría a entre 60 y 80 ocasiones distintas en el período de marzo a julio. El tribunal *a quo* señaló, además, que ese testimonio quedó rebatido por la declaración anterior dada por la demandante ante el Comité de Personal, ocasión en la que indicó que fue donde su supervisora sólo en dos ocasiones.

El tribunal *a quo* también destacó el testimonio no refutado del señor García en cuanto a que la señora Batista le pedía favores que no eran usuales, si ella se hubiese sentido hostigada por él. Éste dio como ejemplo que en una ocasión la demandante le pidió que la llevara a buscar su carro a un taller donde lo estaban arreglando.

Luego de evaluar el testimonio ofrecido por la demandante a la Comisión de Personal de COSVI —declaración que fue admitida en evidencia en el juicio—, concurrimos con la determinación hecha por el Tribunal de Primera Instancia de desestimar esta causa de acción por hostigamiento sexual en contra del señor García y, por ende, de COSVI.

La demandante declaró ante la Comisión que ella consideró el papelito que le envió el señor García como una poesía y no consideró que le faltara el respecto De igual forma, ésta testificó que ella ignoraba las miradas del señor García y que cuando éste le decía piropos, ella le decía dos o tres y que se pasaban peleando. Cuando el señor García le preguntó sobre si ella había tenido una fantasía sexual, ella le pidió de favor que se callara la boca y que se pusiera a trabajar. ▪ De este testimonio no se puede concluir que la demandante sufrió daños compensables por la conducta exhibida en ese plazo por el señor García. Aunque hubo actos que ella recibió con desagrado, no se dan en este caso los criterios que la jurisprudencia exige para que se configure la causa de acción que autoriza la Ley 17, por el hostigamiento, o el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141, por daños generales.

En el cuarto señalamiento de error, la apelante cuestiona la determinación del tribunal *a quo* de eximir de responsabilidad a COSVI, a pesar de que la apelante considera que el patrono permitió un ambiente de trabajo hostil. A esos efectos, la apelante sostiene que la supervisora, señora Julia Santos, sabía del hostigamiento desde dos meses antes de agosto de 1999, fecha en que se cambió de cubículo al codemandado García y se celebró la vista ante el Comité de Personal. De igual forma, la apelante señala que las conclusiones del Tribunal de Primera Instancia reflejan un ambiente de trabajo permisivo, ya que ese foro determinó que ella iba dos o tres veces al día y peinaba y besaba al señor Rexach, quien se sentía ofendido y lloraba ante otra compañera. Añade que mientras tanto, la supervisora estaba desconectada de ese ambiente de relajo en el que, por lo menos, tres empleados violaron la política de hostigamiento sexual de COSVI; sin embargo, cuando hubo que ajusticiar a alguien, lo hicieron con la mujer del grupo por su condición de mujer, lo que constituye un discrimen por razón de sexo.

Anteriormente, en el segundo señalamiento de error, discutimos lo relacionado con la Ley 100 y la alegación de discrimen por razón de género. Aunque somos conscientes del trato diferenciado que en materia sexual puede darse a una mujer frente al trato que recibiría un hombre, las circunstancias del caso de autos no dan base para concluir que tal tratamiento diferenciado ocurrió intencionalmente en este caso o que fue consecuencia de prejuicio contra una mujer. Por tal razón, no es necesario repetir lo que allí señalamos en cuanto a que la apelante no pudo establecer que hubo discrimen por parte del patrono al aplicar medidas disciplinarias distintas a ella y al codemandado Julio García.

En cuanto a la contención de la apelante de que a COSVI debió imponérsele responsabilidad debido a que permitió un ambiente hostil, debemos reiterar lo dispuesto en el Artículo 6 de la Ley 17, *supra*, que establece que el patrono será responsable por los actos de hostigamiento sexual entre empleados en el lugar de trabajo si el patrono o sus agentes o supervisores sabían o debían estar enterados de esa conducta. Ya señalamos anteriormente que el examen que hay que hacer para determinar si un patrono está eximido de responsabilidad por tales actos es si tomó la acción inmediata y apropiada para evitar de manera efectiva la repetición de esos actos.

En el caso de autos, el Tribunal de Primera Instancia determinó que COSVI no podía responder por la nota/ poesía y por la pregunta sobre la fantasía sexual, debido a que la propia demandante señaló que fue después de sucedidos esos eventos, que se quejó por primera vez, por lo que faltaba el conocimiento previo del patrono de los actos de hostigamiento sexual. Es decir, que la supervisora no tenía forma de saber que el señor García le enviaba papelitos a la apelante, le hacía preguntas indiscretas y la invitaba a almorzar, si la apelante no se lo informaba a ella.

En cuanto a la queja ocasionada por las invitaciones a almorzar, el tribunal *a quo* determinó que la propia apelante admitió que la supervisora procedió de inmediato a reubicar al señor García a otro lugar de trabajo y que posteriormente no hubo conducta impropia por parte de éste.

Es decir, el foro sentenciador dio por probado que, una vez la supervisora Julia Santos recibió las quejas de la apelante y del señor Rexach, las refirió de inmediato a la señora Evelyn Burgos, Directora de Personal, quien procedió a activar el *Comité de Personal de COSVI*. Ese Comité investigó las querellas, le tomó declaraciones juradas a los empleados querellantes y a otros compañeros de trabajo, rindió su informe y COSVI tomó las medidas disciplinarias recomendadas de despedir a la apelante y de enviarle una carta de amonestación al señor Julio García para evitar imputación de ese tipo de conducta en el futuro.

Concurrimos con la determinación del tribunal *a quo* en cuanto a que las medidas adoptadas por COSVI fueron adecuadas para liberarla de responsabilidad frente a la apelante. No incidió el foro apelado al resolver así esta cuestión.

**IV**

Por los fundamentos expuestos, confirmamos la sentencia apelada.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones